22 S.W.3d 85 (2000)
In the Interest of K.R., a Child.
No. 14-98-00118-CV.
Court of Appeals of Texas, Houston (14th Dist.).
June 8, 2000.
Rehearing Overruled July 20, 2000.
*88 Miriam J. Riskind, Houston, for appellants.
Bruce S. Powers, Houston, for appellees.
Before Chief Justice MURPHY and Justices YATES, MAURICE E. AMIDEI, ANDERSON, HUDSON, FOWLER, EDELMAN, WITTIG, FROST, and DRAUGHN, En Banc.[*]

MAJORITY OPINION ON REHEARING EN BANC
J. HARVEY HUDSON, Justice.
We withdraw the opinion of the panel delivered on August 31, 1999, and substitute the following en banc opinion.
Appellant asks us to decide whether the trial court erred in forcing him to trial before a jury while wearing handcuffs. Because we find the court's use of visible restraints, under the facts presented here, deprived appellant of his fundamental due process right to a fair trial, we reverse the judgment of the trial court and remand the cause for a new trial.
Appellant, Edgar Hector Rodriguez, resided with and ultimately married Maria Theresa Velasquez. At the time of their marriage, she had a small son, Christopher. Shortly after their marriage, Velasquez gave birth to their daughter, K.R.. Appellant was convicted of reckless injury to a child after he struck and killed Christopher. The State of Texas, through its Department of Protective and Regulatory Services, then filed suit to terminate appellant's parental rights as to K.R. In addition to challenging the trial court's use of visible restraints, appellant also contends the evidence was legally and factually insufficient to support the jury's finding that the termination was in the best interest of the child.

SUFFICIENCY OF THE EVIDENCE
The record reflects that Maria Velasquez gave birth to Christopher in 1992. Appellant and Valasquez were married in June of 1994. K.R. was born a few months later on August 12, 1994. In February of 1995, Velasquez left Christopher, then two years and ten months old, in appellant's care for approximately 20 minutes. Christopher soiled himself. Appellant, in response, struck the child with what he called "an adult strike." The blow lacerated the child's small intestine, causing peritoneal hemorrhaging. Christopher died from his injuries. Appellant was subsequently convicted of reckless injury to a child and sentenced to serve ten years' confinement in the penitentiary.
To terminate a natural parent's parental rights, the court must be convinced by clear and convincing evidence that both (1) a statutory ground for termination exists and (2) termination is in the best interest of the child. See TEX. FAM.CODE ANN. § 161.001 (Vernon 1996). Appellant's conviction for reckless injury to a child satisfies the statutory ground for termination, and he does not challenge that requirement on appeal. See id. § 161.001(L) (the parent has been adjudicated criminally responsible for the death or serious injury of a child). He does, however, challenge the legal and factual sufficiency of the evidence to sustain the jury's determination that termination was in the best interest of his daughter.

"Clear and Convincing" Evidence
The phrase "clear and convincing" has been used at various times (1) as a cautionary admonition to emphasize the seriousness of a cause of action, (2) to describe an intermediate burden of proof, and/or (3) to delineate a heightened standard of review. Because its meaning and significance vary *89 with usage, the "clear and convincing" standard has been the source of confusion, and there is a split of authority regarding its effect upon our disposition.

Cautionary Admonition
To emphasize the gravity of some actions, courts have occasionally observed that the trier of fact must be convinced by "clear and satisfactory" or "clear and convincing" evidence. See Estate of Davis v. Cook, 9 S.W.3d 288, 293 (Tex.App.-San Antonio 1999, no pet.) (undue influence upon a testator must be shown by "satisfactory and convincing" evidence); Digby v. Texas Bank, 943 S.W.2d 914, 919 (Tex.App.-El Paso 1997, writ denied) (malicious prosecution must be proved by "clear, positive, and satisfactory" evidence); Matter of Marriage of Moore, 890 S.W.2d 821, 837 (Tex.App.-Amarillo 1994, no writ) (community property presumption must be rebutted by "clear and convincing" evidence); Gregorcyk v. Al Hogan Builder, Inc., 884 S.W.2d 523, 525 (Tex.App.-Corpus Christi 1994, writ denied) (an ultimate fact may be conclusively shown by wholly circumstantial evidence if such evidence is reasonably "satisfactory and convincing"); Gray v. Turner, 807 S.W.2d 818, 822-23 (Tex.App.-Amarillo 1991, no writ) (judgment nunc pro tunc must be supported by "clear and convincing" evidence that the court's original judgment was not accurately recorded); Pierce-Fordyce Oil Ass'n v. Staley, 190 S.W. 814, 815 (Tex.Civ.App.-Amarillo 1916, no writ) (a court of equity should not set aside a judgment except upon "clear, satisfactory, and convincing" proof of lack of service of process).
When used in this manner, the phrase "clear and convincing evidence" is not a heightened burden of proof and does not represent a deviation from the "preponderance of evidence" standard, but is only an admonition to the trial judge to exercise great caution in weighing the evidence. See Ellis County State Bank v. Keever, 888 S.W.2d 790, 792-93 (Tex.1994). To say a judgment must be supported by "clear and convincing" evidence is "merely another method of stating that a cause of action must be supported by factually sufficient evidence." See Meadows v. Green, 524 S.W.2d 509, 510 (Tex.1975).

Burden of Proof
Traditionally, there has been only one burden of proof or quantum of evidence necessary to determine fact questions in civil cases, i.e., preponderance of the evidence. See Ellis County State Bank, 888 S.W.2d at 792 (Tex.1994). In 1979, however, the United States Supreme Court commanded the Texas Supreme Court to impose an elevated burden of proof in civil commitment cases to meet due process demands. See Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). On remand, the Texas Supreme Court prescribed a heightened burden of proof for civil commitment actions. See State v. Addington, 588 S.W.2d 569, 570 (Tex.1979). The court described the new burden of proof as the "clear and convincing evidence" standard. Id. The following year, the Texas Supreme Court imposed this new burden of proof in cases involving the involuntary termination of parental rights. See In the Interest of G.M., 596 S.W.2d 846, 847 (Tex.1980).[1] Thus, at least in cases involving civil commitments or the involuntary termination of parental rights, the "clear and convincing evidence" standard is not just a cautionary admonition, but an intermediate burden of proof falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. Id.[2]

*90 Standard of Review

When reviewing the sufficiency of evidence in cases where the plaintiff has an elevated burden of proof, the question arises whether the reviewing court should use a heightened standard of review.[3] Historically, there have been only two standards by which evidence is to be reviewedfactual sufficiency and legal sufficiency. See Meadows, 524 S.W.2d at 510. However, Meadows was decided before the United States Supreme Court's decision in Addington and, thus, before the "clear and convincing" standard was anything other than a cautionary instruction. Now that the "clear and convincing evidence" standard has become an intermediate burden of proof in certain cases, such as the involuntary termination of parental rights, the proper standard of review has been much debated.
Some courts have not deviated from the traditional standard when assessing the legal and/or factual sufficiency of "clear and convincing" evidence. See In re J.N.R., 982 S.W.2d 137, 142-43 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (holding the standard of review for either legal or factual sufficiency is not affected by the heightened burden of proof required in the trial court); In the Interest of B.S.T., 977 S.W.2d 481, 484 n. 4 (Tex.App.-Houston [14 th Dist.] 1998, no pet.) (holding that despite a higher burden of proof in the trial court, the standard of review for assessing factual sufficiency remains unchanged).
Other courts, however, have adopted a heightened standard for assessing legal and/or factual sufficiency. See Spangler v. Texas Dept. of Protective Servs., 962 S.W.2d 253, 257 (Tex.App.-Waco 1998, no pet.) (a factual insufficiency point will be sustained if the finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing); Edwards v. Dept. of Protective Servs., 946 S.W.2d 130, 137 (Tex.App.-El Paso 1997, no writ) (holding that while the traditional standard of review remains the same when assessing legal sufficiency, the reviewing court must use a heightened standard for factual sufficiency and consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established); Neiswander v. Bailey, 645 S.W.2d 835, 836 (Tex.App.-Dallas 1982, no writ) (holding that when assessing legal sufficiency, the standard is not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, but whether the existence of the fact is highly probable).[4]
In light of the facts presented here, we find the evidence is legally and factually sufficient under either the traditional or heightened standards of review.
When assessing the best interest of a child, we are guided by several factors articulated by the Texas Supreme Court. These include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the *91 acts or omissions of the parent. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).
The Texas Department of Protective and Regulatory Services offered considerable evidence that appellant would constitute a physical danger to K.R. now and in the future. The record before us shows appellant lost his temper and killed a small boy by punching him in the abdomen for soiling his pants. On another occasion, he became so violent with his wife that she was forced to seek refuge in a shelter for several days. Moreover, several therapists and doctors who evaluated K.R. testified she has severe emotional and behavioral problems which require special attention. Appellant's ability to provide for his daughter's physical and emotional needs now and in the future has been severely diminished by his incarceration in the penitentiary and his admitted use of illegal narcotics.
In his defense, appellant testified that what happened to Christopher was out of character for him and that he had never had problems before that incident. He further testified that he would agree to have any visits supervised and that he had family members who were interested in maintaining a relationship with K.R. Finally, he stated that while he was in prison he had completed vocational training and become involved in church activities.
In deciding whether the evidence is legally sufficient to support the conclusion that the best interest of the child warrants a termination of parental rights, we consider only the evidence and inferences tending to support the jury's findings, and disregard all contrary evidence and inferences. See Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458 (Tex.1992). After reviewing the evidence, we find that not only could the jury reasonably conclude that termination was probably in the best interest of K.R., we find the evidence sufficient to prove it is highly probable. Thus, the evidence, under either standard, is legally sufficient.
In reviewing a factual sufficiency challenge, we consider the evidence that both supports and is contrary to the jury's finding. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). After reviewing the evidence, we find the jury's decision is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Neither do we find the decision so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. Accordingly, the evidence, under either standard, is factually sufficient.
We overrule appellant's challenges regarding the sufficiency of the evidence.

THE USE OF PHYSICAL RESTRAINTS
Prior to voir dire, the trial judge informed all counsel that he intended to leave the appellant handcuffed throughout the trial. Counsel for appellant immediately made a motion, joined by the attorney for the Texas Department of Protective and Regulatory Services, that his client be allowed to sit in the courtroom without handcuffs. Similarly, the attorney ad litem also expressed concern, recognizing the prejudice to appellant. However, despite the concerns of all counsel involved, the trial court refused to allow the handcuffs to be removed. After voir dire and opening statements by the attorneys, but before the introduction of evidence, the trial judge instructed the jury that they were not to infer anything from the fact that the appellant was handcuffed, other than that he had been convicted of a crime and was incarcerated. Appellant remained handcuffed throughout the remainder of the trial. After hearing the evidence, the jury found the parental rights of appellant should be terminated.
Appellant contends the trial court's refusal to allow him to sit before the jury without physical restraints affected his constitutional rights and unduly prejudiced *92 the jury. He argues that this error mandates reversal.

Due Process
While the right to due process of law has been more commonly cited in criminal cases, it has frequent application in civil litigation as well. The Fourteenth Amendment, for example, expressly guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. (Emphasis added). This is not to suggest that children are chattel or that parental rights constitute a property interest. Rather, the United States Supreme Court has recognized that the right to conceive and raise children is one of the "essential" and "basic civil rights of man;" indeed, a right "more precious ... than property rights." Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Similarly, the Texas Supreme Court has stated that the natural right existing between parents and children is of constitutional dimension, and involuntary termination of those rights involves fundamental constitutional rights. See Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). "In cases of this kind the question of the fairness of the hearing is always present and has been jealously guarded by the courts." Pettit v. Engelking, 260 S.W.2d 613, 616 (Tex.Civ.App.-San Antonio 1953, writ ref'd n.r.e.). Thus, there can be little doubt that due process protections are applicable where parental rights are involuntarily terminated.
Whether leaving a civil defendant shackled in the jury's presence violates constitutional guarantees of due process is an issue of first impression in Texas. We find no Texas court that has addressed the issue as to when it is proper to restrain a party in a civil case. In the criminal context, the law regarding restraints is well settled. The United States Supreme Court has said that "even to contemplate such a technique, much less to see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort." Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). This is because "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant." Id.
Similarly, in a long line of cases, the Court of Criminal Appeals has made it clear that, without sound justification, the law abhors allowing a defendant to be seen by the jury wearing handcuffs or shackles. See Long v. State, 823 S.W.2d 259, 282 (Tex.Crim.App.1991); Marquez v. State, 725 S.W.2d 217, 227-30 (Tex.Crim.App. 1987); Clark v. State, 717 S.W.2d 910, 918-19 (Tex.Crim.App.1986); Moore v. State, 535 S.W.2d 357, 358 (Tex.Crim.App.1976) (overruled on other grounds); Gray v. State, 99 Tex.Crim. 305, 268 S.W. 941 (1924). In Gray, the court stated:
We desire to make it perfectly plain that we regard a trial with the prisoner in irons as obnoxious to the spirit of our laws and all ideas of justice, and it is only when the record brings the case clearly within one of the rare exceptions that we would consent for a conviction to stand. Before a judge should permit a case to proceed under such circumstances he should be very sure of his ground.
268 S.W. at 950 (opinion on rehearing). A trial judge must have sufficient reasons to justify leaving a defendant in handcuffs before the jury, and the record must reflect those reasons with particularity. See Long, 823 S.W.2d at 282. In a criminal case, if the record does not affirmatively reflect sufficient reasons justifying the decision, the trial court has abused its discretion and reversible error results. Id.
The State, through its Department of Protective and Regulatory Services, contends the aforementioned criminal cases are not applicable here because in a criminal prosecution the defendant enjoys a constitutional presumption of innocence; whereas, in civil cases, the defendant enjoys no such presumption.
*93 In a termination case, however, a parent has the benefit of a different, yet vitally important, presumption. Because it is presumed to be in the best interest of children that they should remain in the care of their parents, parents have always enjoyed a strong presumption they should retain custody of their natural children.[5]See Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex.1976). The presumption is grounded, in part, on the fact that the natural right which exists between parents and their children is one of constitutional dimensions. Id. Thus, in the same way the sight of shackles erodes a criminal defendant's constitutional presumption of innocence, the use of visible restraints can destroy the civil defendant's constitutional presumption that he is a fit parent and that it is in the best interest of his natural children that he retain his parental rights.[6]
Accordingly, we find that when, as here, "an individual's level of dangerousness is a question the jury must decide in a civil proceeding, it is a violation of the right to a fair trial to compel that individual to appear before the jury bound in physical restraints." Duckett v. Godinez, 67 F.3d 734, 747 (9th Cir.1995). While a trial judge may, at times, use restraints to control an obstreperous litigant or guarantee courtroom security, the mere fact that a party to a civil suit is incarcerated is not a sufficient reason to shackle him during trial. See Lemons, 985 F.2d 354.
Here, the only justification offered by the trial judge for the use of physical restraints was that appellant had "been convicted of a crime ... [and] incarcerated." The fact that a defendant is an inmate is not, in and of itself, a sufficient reason to shackle him in front of the jury. The record in this case contains no indication that appellant was disruptive, threatening, or violent in the courtroom; neither is there any evidence to suggest that appellant was likely to be disruptive, threatening, or violent. Thus, we find the trial court erred in leaving appellant shackled throughout the trial.

Harm
The momentary or inadvertent viewing by one or more jurors of a criminal defendant in handcuffs does not ordinarily constitute reversible error. See Clark v. State, 717 S.W.2d 910, 919 (Tex. Crim.App.1986); Silva v. State, 995 S.W.2d 872, 876 (Tex.App.-Waco 1999, no pet). Even the prolonged, deliberate shackling of a defendant during a criminal trial may, under some circumstances, be harmless. See Long v. State, 823 S.W.2d 259, 283 (Tex.Crim.App.1991) (holding that where trial judge arranged courtroom to prevent jury from seeing defendant's shackles, the error was harmless).
We have no doubt here, however, that appellant was prejudiced by the fact he was physically and visibly restrained in the jury's presence. Prior to entering the courtroom, appellant enjoyed a presumption that he was a fit parent; it was also presumed under the law of this state that it was in K.R.'s best interest to remain in the custody of her natural father. When appellant entered the courtroom, these *94 presumptions were instantly and effectively rebutted. The prejudice arose not from the fact the jury might infer from his restraints that he was an inmate of the state penitentiary, for this they would soon learn in any event. Rather, the injury stemmed from implications that jurors must have reasonably and inevitably drawn from his continued restraint. One of the central issues to be decided by the jury was whether appellant would present a danger to his daughter. Appellant's continued restraint during the trial, had the effect of making appellant appear to be a menacing psychopath; even a pet dog looks vicious when muzzled.[7]
Nevertheless, our rules of appellate procedure provide that where the appellant has been permitted to properly present his case to the court of appeals, no judgment may be reversed unless the error complained of probably caused the rendition of an improper judgment. See TEX.R.APP. P. 44.1(a). In other words, appellant must show that, but for the alleged error, the jury would have rendered a verdict favorable to him See Pitman v. Lightfoot, 937 S.W.2d 496, 537 (Tex.App.-San Antonio 1996, writ denied). In light of the record before us, we find it exceedingly unlikely that the jury would have made a different finding if appellant had not been shackled. Thus, if we are to interpret Rule 44.1(a) to mean that "but for" the court's error, the jury would have made a different finding, we would have to conclude that the error was harmless.
However, the right to a fair trial is no less fundamental in civil cases than it is in criminal cases. See In re International Business Machines Corp., 618 F.2d 923, 932 n. 11 (2d Cir.1980); Bailey v. Systems Innovation, Inc., 852 F.2d 93, 98 (3rd Cir.1988); Chicago Council of Lawyers v. Bauer, 522 F.2d 242, 248 (7th Cir.1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976). Fundamental rights are those that have been guaranteed by the Bill of Rights of the United States Constitution, are traceable in some way to the state or federal constitutions, or are preservative of basic political and civil rights. See In re Estate of Touring, 775 S.W.2d 39, 42 (Tex.App.-Houston [14 th Dist.] 1989, no writ); see also Spring Branch I.S.D. v. Stamos, 695 S.W.2d 556, 560 (Tex.1985). Thus, where constitutional or fundamental protections are offended, the Rules of Appellate Procedure must occasionally yield.[8]
While not rising to the level of a liberty interest, parental rights are nevertheless more precious than property rights. Thus, it was imperative that the defendant be afforded a fair trial. We find that where, as here, (1) one of the primary issues to be determined is the defendant's propensity for violence, (2) the court orders that the defendant be shackled for the duration of the trial, (3) the restraints are visible to the jury, and (4) there is no apparent justification for the restraints appearing in the recordthen the defendant *95 has been denied a fair trial. This is not to say that the mere sight of a defendant in handcuffs constitutes "structural error" or that the error is never susceptible to a harm analysis. However, under the facts presented here, a strict application of Rule 44.1(a) would effectively deny appellant's right to substantive due process of law.[9]
Appellant should have entered the courtroom clothed with the presumption that he was a fit parent. Instead, he entered the courtroom in handcuffs. The jury could only conclude that the court believed the defendant to be a particularly dangerous and violent person. See Duckett, 67 F.3d at 747. While it is highly unlikely that any rational jury could conclude from the evidence that appellant is a fit parent, justice encompasses more than a final disposition. For justice to prevail, it must be achieved justly; this is the essence of due process of law.
Accordingly, we reverse the judgment of the trial court and remand this cause for a new trial.
DON WITTIG, Justice, concurring on rehearing en banc.
When the judiciary takes the trusting, innocent hand of a little girl or a little boy and involuntarily terminates that child's connection to her dad or mom, the court cuts the core relationship of all humankind. To sever this natural right for a child to have a father, or a mother, and for a father or mother to have a child, involves the most essential of all societal structure. One cannot conceive of a greater loss, than the parental loss of a child or the child's loss of her parent. Therefore, for the law to say involuntary termination of parental rights involves constitutional dimensions, that it is more precious than property rights, that it is an essential right,[1] that it is a natural and civil right, is an understatement of the greatest magnitude. The magnitude of such court intrusion into the family relation, dictates that such action only be taken under the strictest scrutinies and only under narrowest construction favoring the parent.[2] Accordingly, I agree with the majority's conclusion that before a trial court may display a child's parent before a jury in manacles, handcuffed, and however shackled, such judicial action requires the utmost exigent circumstances of justification. That justification must explicitly appear in the record or the implementing jurist is charged to explain her concerns for the record.
The court below effectively communicated to the jury his implied finding that appellant was not only a clear and present danger to those in the courtroom, but also was a present threat to his surviving child. The trial judge waited over a day and a half before informing the jury that appellant had been convicted and not to infer anything from the shackles. However, this ill-timed juridical comment, left the jury to speculate for many hours, over night, about the apparent dangerous propensities of appellant, and perhaps even fear for their own safety. The trial court irrevocably and unnecessarily marked appellant as a dangerous character.[3] The experienced jurist, however, made no record mention of his concerns requiring shackles. The majority opinion describes and documents the law's presumption that it is in the best interest of a child to remain with her parent. This presumption of a parent's right to raise their own child is at least as great as the presumption of innocence. The trial court disregarded not only the objections of all the parties and ad litem, but also ignored the presumption that the relationship of the parent, however *96 inadequate that parent, predominates over the dictates of the state.
The dissent goes awry when it ignores the presumption of every parent's responsibility and right to raise their own children. Is this not at least as fundamental to our law as the presumption of innocence? Or does our law afford greater protection to one accused of crime than to one who serves the critical societal role of father or mother? Morever, does not our Texas jurisprudential heritage strictly forbid a judge from commenting upon the weight of the evidence?[4]
Because of the tragic proof of record, I agree with both the majority and the dissent that the evidence, by the clear and convincing standard, supports the instant two findings necessary for the termination of the parental rights of appellant.
I write separately on the narrow issue of our standard of review on the termination issue. The majority articulately describes[5] the debate over the review standard that has challenged the courts of appeals without supreme court guidance for over twenty years. Today, however, the majority opinion does not embrace the precedent of this very court. We have previously held that there is no middle "clear and convincing" standard of review.[6] "The requirement of clear and convincing evidence is merely another method of stating that a cause of action must be support [sic] by factually sufficient evidence."[7]
I would argue at least two reasons why we should adopt the intermediate standard of review in parental termination cases. First, both the federally and state mandated constitutional concerns require the presence of clear and convincing evidence.[8] Second, the legislature has mandated the intermediate standard. In both instances, only flawed logic could argue that both the constitutional and the legislative requirements apply only at the trial court level and not at the appellate level. If we review the legal and factual sufficiency of evidence applying the same standard as we review the preponderance of the evidence, we too would sometime violate the due process of all Texas' parents and children. If we do not apply the higher constitutional and statutory standards, we too fail our own constitutional responsibilities.
The difficulty of the standard of review concept seems to me that we fail to recognize the standard for what it is. Both legal and factual sufficiency are essentially negative concepts. If there is a complete absence of evidence, "no evidence" as a matter of law, there is insufficient evidence, the evidence is so weak that a finding is clearly wrong and manifestly unjust, or the evidence is against the great weight and preponderance of the evidence, then we have found something is missing, lacking, *97 mere surmise or non-existent. If however, we find there is some evidence, more than a scintilla, that does not mean the fact finder had before it "clear and convincing evidence." When we positively find some supporting evidence, we are usually not saying there is overwhelming evidence or that the evidence was supported by the great weight.
When we address a legal sufficiency or no evidence issue, we consider only the evidence and inferences viewed in their most favorable light and disregard evidence and inferences to the contrary.[9] In a parental termination case would we not then be disregarding evidence and inferences that support the maintenance of the parent-child relationship? Again, we would not be requiring clear and convincing evidence.
Viewed another way, given the burden of proof, if the state appealed an adverse fact finding, a parent's rights would still be protected, de facto, by the dual legal and factual sufficiency standard of review. The parent's presumed right to their own child found by the trier of fact would only be overturned if the state demonstrated on appeal there was no evidence to support the parent's retention of the child and the evidence conclusively established the two prong termination requirements as a matter of law. A factual sufficiency appellate review would require the state to establish that the great weight of evidence is so contrary to the finding the parent keeping the child that such failure to find is manifestly unjust.[10] Under either of these negative standards, given the absence of a finding of termination, the parent is both constitutionally and statutorily protected as applied, (de facto). Not so, when parental rights are terminated.
The majority implicitly grasps this dichotomy. In the case sub judice, a parent's natural, constitutional and statutory rights are illegitimately terminated if appellate courts do not apply the intermediate standard. A standard of review that does not require proof greater than a preponderance must fail. An appellate review that only reviews the supporting evidence, disregards contrary evidence, or is searching the entire record only for evidence in excess of a scintilla, both logically and constitutionally fails.
While several of our sister courts correctly recognized this, their insistence that the legal sufficiency standard is appropriate is only partially correct. When the state appeals an adverse termination finding, the traditional no evidence standard works because the question is asked in the negative. When, however, the party without the burden of proof appeals, i.e., the parent, neither the traditional legal or factual sufficiency standards are workable, much less constitutional or in compliance with legislative mandate.
The Fort Worth court helps captures this elusive concept in In the Interest of L.R. M.:[11] "We do not believe the Texas Supreme Court intends to require trial courts to adhere to a higher standard of proof in termination cases while allowing the courts of appeals to use the same standard of review as in cases decided by preponderance of the evidence."[12] Justice Lattimore, I believe, correctly prescribes the appellate standard of review when the fact finder is required to make a finding by *98 clear and convincing evidence: "The court of appeals will only sustain a point of error alleging insufficient evidence if the trier of fact could not reasonably find the existence of the fact to be established by clear and convincing evidence."[13] The language used by our majority, that the standard of review would test whether the trier of fact "could reasonably conclude that the existence of a fact is highly probable" (taken from Neiswander, supra) is, as Justice Lattimore pointed out, an unnecessary complication; "`highly probable' is merely a synonym for `clear and convincing.'"[14] The Waco Court of Appeals adopted this same standard[15] and further elucidates the standard of review:
In a case where the burden is by clear and convincing evidence, an insufficient evidence point may be sustained when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing.[16]
Though the Texas Supreme Court recently wrote on the clear and convincing standard as applied in the libel context,[17] it neither addressed the legislative requirement in parental termination cases nor did it assess the constitutional, fundamental and natural right of every parent and child in the context of the family. The court only correctly refused to extend federal procedures to Texas summary judgment practice.
In summary, I argue that whenever an appellate court affirms a final judgment terminating parental rights, it, like the trier of fact, may only do so by the intermediate standard of review guaranteeing the application of the clear and convincing evidentiary requirement. I would expressly overrule our precedents of In re B.S.T. and Oadra.
JOE L. DRAUGHN, Justice, dissenting (Assigned).
I respectfully dissent from the majority's decision to reverse the judgment and jury verdict in this case which terminated the parental rights of appellant to his daughter. I disagree with the majority opinion's conclusion that the appellant was denied a fair trial simply because he was in handcuffs during the trial. After considering all of the circumstances of the trial and the substantial evidence presented to the jury, I find that the mere observation of the appellant in handcuffs by the jury, when viewed in the total context of the trial and against its evidentiary backdrop, was not so prejudicial that it probably caused the jury to render an improper verdict.
I do not disagree that the trial court erred in keeping appellant in handcuffs during trial, but I conclude that the error was not so prejudicial as to warrant reversal of the judgment when considered under the harmless error standard by which we must be guided in civil cases. We may not reverse a judgment based on the ground that the trial court made an error of law unless we conclude that the error complained *99 of probably caused the rendition of an improper judgment. See TEX.R.APP. P. 44.1(a)(1). In conducting a harm analysis, we must examine each case on its particular facts. Obviously, I disagree with the majority's conclusion that the error is fundamental and prevented appellant from receiving a fair trial, thus making the harmless error rule inapplicable. What follows is my review of this case and the law to support and clarify my disagreement with the majority opinion.
There is no need to rehash all the horrific facts developed in this trial concerning the termination of appellant's parental rights to his daughter. The evidence was thorough and undisputed that appellant caused the death of his infant step-son by violently hitting him in his stomach with his fist because the child soiled himself; and that at the time of trial appellant was serving a ten-year sentence for his crime. Prior to voir dire, the judge informed the attorneys that appellant would be kept in handcuffs during the trial. Counsel objected and voiced concern about potential prejudice. During voir dire, the prospective jurors were informed of the fact that appellant was previously convicted for killing his step-son and imprisoned. The prospective jurors were questioned extensively by the attorneys concerning any potential prejudice they might have because of appellant's crime and incarceration, but they were asked no questions about potential prejudice they might have concerning his being handcuffed during the trial. A jury was selected and opening statements were presented by the attorneys; following which, the trial court judge instructed the jury that it was not to infer anything from the fact that appellant was handcuffed, other than he had been convicted of a crime and incarcerated. The jury was further instructed that it should consider only the evidence presented from the witness stand.
The majority opinion concludes that appellant did not receive a fundamentally fair trial because the jury saw him in handcuffs; that his constitutional due process rights were violated and that such error calls for automatic reversal without subjecting it to a harm analysis. As noted, I agree that the trial court erred in keeping appellant in handcuffs during trial, but I strongly disagree that the trial court's error is not subject to a harm analysis in this civil case. And after subjecting it to such an analysis, I find that the error was not so harmful that it prejudiced the jury to such an extent that it probably caused the rendition of an improper judgment.
The majority concludes that the trial court's error in keeping appellant handcuffed is not subject to a harmless error analysis because the error is constitutional and fundamental in nature. The United State Supreme Court has adopted the general rule that a constitutional error does not automatically require reversal of a conviction in criminal cases; indeed, the Court has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors under certain circumstances can be harmless. See Arizona v. Fulminante, 499 U.S. 279, 307, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991) (citing therein to various Supreme Court cases subjecting numerous constitutional errors to harmless-error analysis). In fact, in Fulminante, the Court found that the admission in evidence of an involuntary confession, allegedly in violation of due process, was subject to a harmless error analysis. See id. at 310-11, 111 S.Ct. at 1265-66. Only errors considered "structural" by the United States Supreme Court are immune from harmless error analysis. See id. at 309-10, 111 S.Ct. at 1265. "Structural" errors are defined as defects in the framework within which the trial proceeds, errors that transcend the trial process, rather than simply an error in the trial process itself. See id. at 310, 111 S.Ct. at 1265. Examples of such structural defects are total deprivation of a defendant's right to counsel, a judge who was not impartial, and intentional exclusion of members because of race from *100 grand and petit juries. See id. at 309-10, 111 S.Ct. at 1265. The majority apparently seeks to create another category of constitutional error, immune to harmless error analysis, even though it occurs during the trial process and is therefore not "structural" in nature.
Contrary to this approach, the United States Supreme Court has held that the failure to instruct the jury on the presumption of innocence was non-structural and was susceptible to harmless error analysis. See Kentucky v. Whorton, 441 U.S. 786, 789-90, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979). The Court held that the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution; rather, such failure must be evaluated in light of the totality of the trial circumstances, including other instructions given, arguments of counsel, whether the weight of evidence was overwhelming and other factors to determine whether the defendant received a constitutionally fair trial. See id. at 789, 99 S.Ct. at 2090.
In its application of our Rules of Appellate Procedure, the Texas Court of Criminal Appeals adopted the policy that no error, other than those federal constitutional errors defined as "structural" by the United States Supreme Court, are automatically immune from harmless error analysis. See Cain v. State, 947 S.W.2d 262 (Tex.Crim.App.1997); Llamas v. State, 12 S.W.3d 469 (Tex.Crim.App.2000); see also TEX.R.APP. P. 44.2 (Reversible Error In Criminal Cases).
Additionally, as recognized by the majority opinion, a long line of criminal cases in Texas have addressed the issue of defendants wearing handcuffs during trial. See Long v. State, 823 S.W.2d 259 (Tex. Crim.App.1991); Lucas v. State, 791 S.W.2d 35 (Tex.Crim.App.1989); Marquez v. State, 725 S.W.2d 217 (Tex.Crim.App. 1987); Clark v. State, 717 S.W.2d 910 (Tex. Crim.App.1986); Mouton v. State, 155 Tex. Crim. 450, 235 S.W.2d 645 (1951). Contrary to the majority's view, I find that many of these cases employ a form of harm analysis in deciding whether to reverse.[1]See Long, 823 S.W.2d at 283; Lucas, 791 S.W.2d at 57. The question of prejudice or harm is always lurking in the analysis of the various cases. It is clear that the basis for reversal in criminal cases is that the wearing of handcuffs infringes on the defendant's presumption of innocence. In any event, I disagree with the majority's conclusion that appellant's wearing of handcuffs in this case constitutes a special error so egregious that it is automatically reversible even though it is not structural. The majority opinion seems to create a special category of trial error that has the same effect as structural error, grounded upon the conclusion that the error deprives the defendant of a fundamentally fair trial. I have no argument with the conclusion sought but I would submit that it is simply a round about way of utilizing structural error analysis when it does not fit the model.
While almost all of the cases relied on by the majority are criminal cases, my conclusion is also buttressed by those civil cases addressing this issue, where there is no presumption of innocence. Thus, the analogy drawn by the majority from the criminal cases does not, in my opinion, apply to civil cases. Based on my review of the cases, the only significant consideration as to restraints in civil cases is the question of juror prejudice or harm. In other words, was the trial error in requiring a party to wear restraints harmless? In Texas civil cases, an analysis of the effect of an error requires us to decide whether the error probably caused the jury to render an improper judgment. See TEX.R.APP. P. 44.1(a)(1). Until recently *101 there were no civil cases in Texas addressing the question of a party wearing restraints during trial. However, as noted by the majority opinion, there are several federal cases which have addressed the issue. See Duckett v. Godinez 67 F.3d 734 (9th Cir.1995); Davidson v. Riley, 44 F.3d 1118 (2 nd Cir.1995); Woods v. Thieret, 5 F.3d 244 (7 th Cir.1993); Lemons v. Skidmore, 985 F.2d 354 (7 th Cir.1993); Holloway v. Alexander, 957 F.2d 529 (8th Cir. 1992); Tyars v. Finner, 709 F.2d 1274 (9th Cir.1983). Almost all of these cases involve civil lawsuits by prisoners against their respective penal institutions for alleged violations of their civil rights. My review of these cases indicates that a harm analysis, in some form, was employed in determining the outcome. See Duckett, 67 F.3d at 750 (remanded question of defendant shackled during punishment phase for harmless error analysis); Davidson, 44 F.3d at 1124 (error not automatically reversible, for harmless-error analysis applies); Woods, 5 F.3d at 249 (no prejudice where maximum security inmates shackled because shackles not directly related to issue of lack of food and judge took steps to minimize visibility and gave curative instruction to jury); Lemons, 985 F.2d at 359 (error not automatically reversible, for harmless-error analysis applies); Holloway, 957 F.2d at 530 (not prejudicial for inmate to be shackled where lawsuit involved prison living conditions in maximum security prison, and jury would know he was an inmate; "[n]o prejudice can result from [the jury] seeing that which is already known").
The First Court of Appeals recently held that no harm resulted to a prisoner litigant if the venire panel saw appellant initially enter the courtroom with handcuffs, and then later saw him tried without them. See Carson v. Gomez, 14 S.W.3d 778 (Tex.App.-Houston [1st Dist] 2000, no pet. h.). The court held that the removal of the handcuffs removed any potential prejudice. See id. at 780-82. The plaintiff in Carson sued several prison guards, claiming the guards had beaten him. See id. at 779-80. They, in turn, claimed the inmate attacked them. See id. The jury found in favor of the guards. See id. The majority pointed out that appellant never mentioned handcuffs during his voir dire examinationeven after the judge and opposing counsel encouraged him to do so. See id. The majority in Carson assumed therefore that he was not handcuffed during the entire trial despite the plaintiff's [Carson's] claim to the contrary on appeal. See id. However, the dissenting opinion in Carson found that handcuffing (and unhandcuffing, if it occurred) to be prejudicial because the core issue concerned the issue of appellant's violent disposition in prison. See id. at 783-84 (Duggan, J., dissenting).
The essence of my disagreement with the majority opinion in this case is its conclusion that appellant's appearance in handcuffs before the jury is fundamental error so egregious that it denied him a fair trial and that it occupies a special category exempt from the harmless error analysis required by Texas law in civil cases. In supporting its conclusion, the majority analogizes from criminal cases where the viewing of defendant in handcuffs may impinge on or defeat the defendant's presumption of innocence applicable to every person charged with a crime. The majority equates the presumption of innocence to the presumption in parental termination cases that the best interests of a child are served by awarding custody to a natural parent. See Lewelling v. Lewelling, 796 S.W.2d 164 (Tex.1990). The majority found that this presumption was destroyed from the outset when appellant entered the courtroom in handcuffs. I disagree. Initially, I submit that the weight of the analogy does not hold. As previously noted, even the failure to instruct the jury on presumption of innocence is subject to harmless error analysis. See Whorton, 441 U.S. at 789-90, 99 S.Ct. 2088.
I do not believe that the mere presence of handcuffs under the circumstances of *102 this case automatically defeated or rebutted the natural parent presumption and constituted such an egregious error that it was immune from any harm analysis. The better approach, I believe, is that enunciated in Whorton, which is to weigh the effect of the error against the totality of the trial circumstances to determine whether appellant received a fair trial. See id. at 789, 99 S.Ct. 2088. Indeed, contrary to the majority, I conclude that the horrific facts raised in voir dire, which were throughly documented by the evidence concerning appellant's killing of his step-son and his tendency to direct violence toward his wife, were overwhelming. This, in my opinion, is what rebutted the presumption that it was in the child's best interest to award custody to appellant. I submit that appellant's wearing of handcuffs pales into insignificance when compared to the overwhelming evidence presented to the jury.
Additionally, I find the following two factors are persuasive in regard to the possibility of harm: (1) the attorneys for appellant knew in advance of voir dire about the handcuffs and could have examined the jury with regard to any potential prejudice presented by the handcuffs, and (2) the trial judge, to a significant degree, mitigated any prejudicial effect by instructing the jury that it was to infer nothing from the appellant's being handcuffed, other than that he was incarcerated for the crime about which they already knew. The judge further instructed the jury to consider only the evidence presented from the witness stand. Except in extreme cases, a jury is presumed to follow instructions of the court. See Blondett v. State, 921 S.W.2d 469, 474 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (citing Rose v. State, 752 S.W.2d 529, 554 (Tex.Crim.App.1987); see also Colburn v. State, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998) (presuming the jury generally follows the trial court's instruction unless appellant presents evidence to rebut presumption).
I disagree with the implication woven throughout the majority opinion that the jury somehow cannot be trusted to place the wearing of the handcuffs by the defendant in the proper perspective in view of the judge's instructions and their own common sense. I believe we, as appellate judges, tend to underestimate the jury's ability to deal with such problems by assuming that the impact of the handcuffs is so great that it short circuits the jury's ability to weigh the evidence as they are instructed and decide the case accordingly.
I also respectfully part company with the majority in its conclusion that the jury could only conclude from appellant's being in handcuffs that the trial court believed the defendant to be a particularly dangerous and violent person or that the handcuffs made appellant appear to be a menacing psychopath.[2] I submit it is more probable that the jury took the trial judge at his word and inferred that appellant was handcuffed only because he was presently incarcerated for a crime. This conclusion becomes even more likely when it is considered that the venire was informed by the attorney for appellant that he was in fact serving a sentence for killing his step-son. If the defendant's attorney was concerned about the possibility of significant prejudice resulting solely from the viewing of appellant in handcuffs, he could have, as stated, questioned the venire on that issue. He did not, either inadvertently or intentionally. More likely he regarded the real issue to be dealt with before the venire was appellant's violent action in causing the death of his step-son.
*103 A civil litigant has a right to a fair trial, but not a perfect one. See, e.g., Lemons, 985 F.2d at 357. And to determine whether appellant received a fair trial, we should consider the totality of the trial from voir dire to closing argument. Here, appellant was represented by competent counsel throughout the trial. Both adverse and favorable evidence was presented to the jury. The evidence was complete and thorough. Even the majority agrees it was more than sufficient to sustain the jury's decision that appellant's parental rights should be terminated. I agree that the trial judge erred in keeping the appellant in handcuffs without identifying on the record his reasons for doing so. Nevertheless, based upon an examination of the complete circumstances of the trial, including the trial court's mitigating instructions to the jury and the other factors discussed, I find that the error did not cause the rendition of an improper verdict; that the error under the unusual facts of this case was harmless. See TEX.R.APP. P. 41(a)(1).
Accordingly, I would affirm the jury's verdict and the judgment of the trial court, limiting my affirmance to the specific facts of this case, and include a caveat that except in the rarest of cases, the failure of the trial court to specify reasons for keeping civil litigants in handcuffs during trial would not survive a harmless error analysis and would probably result in reversible error. For all of the stated reasons, I respectfully dissent.
NOTES
[*] Senior Justice Joe L. Draughn sitting by assignment.
[1] In 1995, the Legislature imposed the "clear and convincing evidence" standard in such cases when it amended the Family Code. See Act of May 24, 1995, 74th Leg., R.S., ch. 709, § 1, 1995 Tex. Gen. Laws 3745.
[2] When used to define a burden of proof, "clear and convincing" means "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994).
[3] Hon. Bill Vance, The Clear and Convincing Evidence Standard in Texas: A Critique, 48 Baylor L.Rev. 391 (1996).
[4] For a more complete listing of the decisions on both sides of this issue, see In the Interest of D.L.N., 958 S.W.2d 934, 940 (Tex.App.-Waco 1997, pet. denied); Edwards, 946 S.W.2d at 135-37.
[5] The presumption that the best interest of a child is served by awarding custody to a natural parent is "deeply embedded" in Texas law. Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex.1990).
[6] A number of federal courts have discussed the use of restraints in civil suits. See, e.g., Davidson v. Riley, 44 F.3d 1118 (2d Cir.1995); Lemons v. Skidmore, 985 F.2d 354 (7th Cir. 1993); Holloway v. Alexander, 957 F.2d 529 (8th Cir.1992); Tyars v. Finner, 709 F.2d 1274 (9th Cir.1983). See also Woods v. Thieret, 5 F.3d 244, 246-47 (7th Cir.1993) (plaintiff's inmate witnesses required to appear in shackles and handcuffs). Unanimously, these courts have held that the same concern expressed in criminal cases, the right to a fair trial, is applicable to parties in civil suits. Accordingly, they have recognized that the trial court must exercise its discretion with great caution, being sure to use restraints only when expressly found to be necessary, and even then, using no greater restraint than required. See Davidson, 44 F.3d at 1126.
[7] The specter of a manacled defendant, continuously restrained throughout the trial, portends that this is one who, like the fictional Hannibal Lecter, presents an unremitting danger to all those passing within his grasp. See People v. Moss, 215 A.D.2d 594, 626 N.Y.S.2d 853, 854 (1995) (where defendant was denied a fair trial when prosecutor suggested he was comparable to Hannibal Lecter).
[8] If the violation of such a party's rights renders the trial "fundamentally unfair," the error will mandate a new trial even without a showing of harm. See Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). For example, the denial of a jury trial constitutes reversible error without a showing of harm. See Texas & P. Ry. Co. v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528, 531 (1958); Meyer v. Henery, 400 S.W.2d 933 (Tex.Civ.App.-Austin 1966, no writ). Similarly, the improper denial of a Batson challenge also constitutes reversible error regardless of whether it probably caused the rendition of an improper judgment. See United States v. McFerron, 163 F.3d 952, 955-56 (6th Cir.1998); United States v. Hall, 152 F.3d 381, 408 (5th Cir. 1998); Tankleff v. Senkowski, 135 F.3d 235, 248 (2 nd Cir.1997).
[9] "Fair play" is "the essence of due process." See Galvan v. Press, 347 U.S. 522, 530, 74 S.Ct. 737, 98 L.Ed. 911 (1954).
[1] See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212 31 L.Ed.2d 551 (1972).
[2] See Cawley v. Allums, 518 S.W.2d 790, 792 (Tex.1975).
[3] See Harrell v. Israel, 672 F.2d 632, 635 (7th Cir.1982).
[4] See Tex.R. Civ. P. 277; Briseno v. Martin, 561 S.W.2d 794, 796 (Tex.1977).
[5] The majority's characterization of the community property presumption requirement of clear and convincing evidence as merely an admonition to the trial court to exercise great caution is problematic. This standard, has been codified by the legislature at TEX. FAM. CODE ANN. § 3.003. While there may be constitutional concerns when applied to constitutionally protected classes of property, it is within the legislature's general prerogative to set the burden of proof. And, as I will argue, the standard of review must follow the burden of proof in the context. Similarly, I disagree that the "clear and convincing" standard is appropriate even as an admonition in a malicious prosecution case. In the malicious prosecution case, the supreme court clearly reiterated that the preponderance of the evidence remains the correct burden of proof, "rather than the more extraordinary burden of clear and convincing evidence." See Ellis County State Bank v. Keever, 888 S.W.2d 790, 791 (Tex.1994).
[6] See In re B.S.T., 977 S.W.2d 481, 484 n. 4 (Tex.App.-Houston [14 th Dist.] 1998, no pet.); Oadra v. Stegall, 871 S.W.2d 882, 892 (Tex. App.-Houston [14 th Dist.] 1994, no writ).
[7] Id.
[8] See Stanley; 405 U.S. at 651, 92 S.Ct. 1208; accord Santosky v. Kramer, 455 U.S. 745, 768, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In Interest of G. M., 596 S.W.2d 846, 846-47 (Tex.1980).
[9] See Alm v. Aluminum Co. of America, 717 S.W.2d 588, 593 (Tex.1986).
[10] W. Wendell Hall, Standards of Review in Texas, 29 St. Mary's L.J. 351, 487 (1998).
[11] 763 S.W.2d 64 (Tex.App.Fort Worth 1989, no writ).
[12] Id. at 66-67. But see D.O. v. Texas Dep't of Human Serv., 851 S.W.2d 351, 353 (Tex.App.-Austin 1993, no writ); Hickey v. Couchman, 797 S.W.2d 103 (Tex.App.-Corpus Christi, 1990, writ denied); Green v. Texas Dep't of Protective and Regulatory Serv., 25 S.W.3d 213, 217-18 (Tex.App.-El Paso 2000, no pet. h.); In Re T.K. E., 5 S.W.3d. 782, 784-85 (Tex.App.-San Antonio, 1999, no pet. h.).
[13] In the Interest of L.R.M., 763 S.W.2d at 66-67.
[14] Id.
[15] See Spangler v. Texas Dep't of Protective and Regulatory Serv., 962 S.W.2d 253, 257 (Tex.App.-Waco, 1998, no pet.); In re A.M.C., 2 S.W.3d. 707, 710-11 (Tex.App.-Waco, 1999, no pet. h.).
[16] Id. (citations omitted). Today we only address the intermediate "clear and convincing standard" in the context of a constitutionally protected right.
[17] See Huckabee v. Time Warner Entertainment Co., 19 S.W.3d 413, 420-23 (Tex.2000). Also challenging to the courts, will be the recently adopted tort reform legislation requiring "clear and convincing" evidence for the award of punitive damages. SEE TEX. CIV. PRAC. & REM CODE ANN. § 41.003(a) (Vernon Supp.2000).
[1] The courts have held that the trial judge must reflect on the record the reasons a defendant is kept in handcuffs or other restraints, so the appellate courts can evaluate whether the trial court abused its discretion in requiring the restraints. See Long, 823 S.W.2d at 282.
[2] I also disagree with the majority opinion's implied suggestion that application of a harm analysis to trial error such as this one would allow the trial court with impunity to deprive a civil litigant of the most fundamental constitutional and common law rights. To the contrary, I would suggest that my approach, if adopted, would act as a clarion call to learned trial judges to consider with the utmost caution the prospect of keeping any litigant in visible restraints during a trial before a jury. And it would do so without significant emasculation of the harmless error rule.