**In the interest of K. R.**

**No. 00–0907.**

Supreme Court of Texas.

Nov. 8, 2001.

Rehearing Overruled Jan. 31, 2002.

Bruce S. Powers, Asst. County Atty., William S. Cox, Houston, for petitioner.

Miriam Judith Riskind, Isenberg & Riskind, Houston, for respondent.

Justice HECHT delivered the opinion of the Court.

The "harmless error" rule, Rule 44.1(a) of the Texas Rules of Appellate Procedure, states in part that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of ... probably caused the rendition of an improper judgment...." In the case now before us, a divided court of appeals, en banc, held that to apply this rule to a judgment terminating a parent-child relationship when the trial court erred by keeping the defendant, a prison inmate on release, handcuffed during the trial in sight of the jury would violate the due process guaranty of the Fourteenth Amendment to the United States Constitution.[1] We disagree.

Edgar Hector Rodriguez and Maria Theresa Velazquez lived together for about a year before they married in July 1994. Their daughter, K .R., was born a month later. Rodriguez physically abused Velazquez many times while she was pregnant, and continued to do so after K.R.

was born. Once in December 1994, Rodriguez beat Velazquez so severely that she fled with her children to a shelter and stayed there four days. Rodriguez was arrested, jailed for two days, and then released when Velazquez did not press charges.

Velazquez had a son from a prior relationship, Christopher, born in March 1992, and she occasionally left him and K.R. with Rodriguez when she was at work or running errands. Mid-morning on February 12, 1995, Velazquez left home for about thirty minutes to go to the store, leaving the children with Rodriguez. While she was gone, Christopher, who was not quite three, wet his pants, and Rodriguez became extremely angry. Acting in his words "like a fool, like a crazy man", he whipped Christopher on his bottom with a belt and struck him hard in the stomach. Six-month-old K.R. was in another room of the house at the time. When Velazquez returned, Rodriguez did not tell her what had happened. Later in the day Velazquez became concerned that Christopher was vomiting, and that evening, she and Rodriguez took him to the hospital. There they were interviewed by a caseworker for the Texas Department of Protective and Regulatory Services, who concluded that Christopher had been abused. The next day the Department obtained a court order giving it temporary custody of Christopher and K.R. A day later, Christopher died from his injuries—lacerations to his small intestine and internal hemorrhaging caused by a blunt trauma to his abdomen.

In August 1995, Rodriguez was convicted of reckless injury to a child[2] and sentenced to ten years' imprisonment. Velazquez filed for divorce in January 1996,

---

1. 22 S.W.3d 85 (Tex.App.—Houston [14th Dist.] 2000) (en banc).

2. *See* Tex. Penal Code § 22.04.

and a year later the Department, having placed K.R. in foster care and sought counseling for Velazquez, intervened to terminate both parents' rights. At the trial in November 1997, Rodriguez, who was still serving his sentence and had been released from prison to attend the trial, testified that he had tried to reform in prison, performing all his work assignments, completing a vocational training course, attending church services twice weekly, studying the Bible, and going to Alcoholics Anonymous sessions. He testified that he still loved K.R., although he had not seen her in the two-and-one-half years since Christopher's death, and she would not recognize him. But Velazquez testified that she believed that Rodriguez did not love K.R. and that his relationship with her should be terminated. The jury found that both Rodriguez's and Velazquez's relationship with K .R. should be terminated, and the trial court rendered judgment on the verdict.

At the outset of the trial, the court ordered that Rodriguez be kept in handcuffs while in the courtroom. The court overruled objections by Rodriguez, the Department, and K.R.'s attorney ad litem that handcuffing Rodriguez in sight of the jury would prejudice his case. The court gave no explanation for its ruling, and the record reveals none, other than the fact that Rodriguez was still serving his prison sentence. During voir dire, counsel inquired of the venire whether, if they heard evidence that Rodriguez had been convicted for Christopher's death and was serving a prison sentence, they would be unable to consider any other evidence and would automatically find that Rodriguez's or Velazquez's parental rights should be termi-

nated, but the venire was not asked how they would be affected by seeing Rodriguez in the courtroom in handcuffs. After the jury was impaneled and opening statements were made, the trial court instructed the jury without objection as follows:

> Ladies and Gentlemen: You're going to know that Mr. Rodriguez will be handcuffed to his chair at counsel table or to the chair in the witness stand throughout these proceedings. You understand that that's because he has been convicted of a crime, the result of which he's incarcerated at the Texas Department of Criminal Justice—I believe they call it now. So, you're not to infer anything from the fact that he's handcuffed, other than the fact that he's been convicted of a crime which causes his incarceration.

No other instruction on the subject was requested, and none was given.

Rodriguez appealed. The court of appeals, en banc, unanimously concluded that the evidence for termination of Rodriguez's parental rights was clear and convincing, and that while the trial court erred in keeping Rodriguez handcuffed before the jury, that error did not cause the rendition of an improper judgment and therefore, under Rule 44.1(a), was not a ground for reversal.[3] The court stated that even though Rodriguez's restraint during the trial "had the effect of making [him] appear to be a menacing psychopath",[4] "one who, like the fictional Hannibal Lecter, presents an unremitting danger to all those passing within his grasp," [5] in light of the record it was "exceedingly unlikely that the jury would have made a different finding if [Rodriguez] had not

**3.** 22 S.W.3d at 91, 94 (Tex.App.—Houston [14th Dist.] 2000); id. at 95–96 (Wittig, J., concurring); id. at 98 (Draughn, J ., dissenting).

**4.** Id. at 94.

**5.** Id. at 94 n. 7.

been shackled." [6]   A majority of the court, however, concluded that notwithstanding Rule 44.1(a), the case must be retried because by being handcuffed in the sight of the jury Rodriguez was denied due process in violation of the Fourteenth Amendment to the United States Constitution.[7]   The court believed that to apply the "harmless error" rule to so serious an error would inadequately protect the fundamental importance of the parent-child relationship.[8]

■ The Department appealed, raising a single issue: whether the Fourteenth Amendment requires a new trial in this case when Rule 44.1(a) does not.  Neither the Department nor Rodriguez has cited us to any case in any jurisdiction holding that a trial court's erroneous shackling of a defendant at trial requires reversal if the judgment was unaffected.  The court of appeals cited several federal court decisions that have warned against shackling a party or witness during civil trials,[9] but none of them clearly holds the harmless-error rule inapplicable.

The issue of shackling a party during trial naturally arises more often in criminal cases.  The United States Supreme Court has admonished that a criminal defendant should not be shackled in the sight of the jury except as "a last resort," [10] and our Court of Criminal Appeals has echoed that shackling should be avoided "except where there has been a showing of exceptional circumstances or a manifest need for such restraint." [11]   But neither court has held that an error in shackling a criminal defendant requires a new trial even if the error did not, beyond a reasonable doubt, contribute to the defendant's conviction or punishment.

■ As a general matter, few exceptions to the "harmless error" rule have been recognized.  In criminal cases, the United States Supreme Court, in its words,

has been faithful to the belief that the harmless-error doctrine is essential to preserve the "principle that the central purpose of a criminal trial is to decide the° factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error ." [12]

The Supreme Court has refused to hold that all constitutional errors in criminal trials require reversal,[13] although it has recognized that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," [14] referring to such errors as "structural defects in the constitution of the trial mechanism, which defy analysis

6.  *Id.* at 95.

7.  *Id.* at 94–95.

8.  *Id.* at 94.

9.  *See, e.g., Duckett v. Godinez,* 67 F.3d 734 (9th Cir.1995); *Davidson v. Riley,* 44 F.3d 1118 (2d Cir.1995); *Woods v. Thieret,* 5 F.3d 244 (7th Cir.1993); *Lemons v. Skidmore,* 985 F.2d 354 (7th Cir.1993); *Holloway v. Alexander,* 957 F.2d 529 (8th Cir.1992); *Tyars v. Finner,* 709 F.2d 1274 (9th Cir.1983).

10.  *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

11.  *Long v. State,* 823 S.W.2d 259, 282 (Tex. Crim.App.1991).

12.  *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

13.  *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

14.  *Id.*

by 'harmless-error' standards," [15] "rather than simply an error in the trial process itself." [16] Among such "structural" errors are the total deprivation of an accused's right to counsel at trial, a trial before a judge who was not impartial, the unlawful exclusion of members of a defendant's race from the grand jury, the denial of an accused's right of self-representation, and the denial of a public trial.[17] On the other hand, "trial errors" subject to "harmless error" analysis include errors in the charge and in evidentiary rulings, the denial of a defendant's right to be present at trial, an improper comment on a defendant's silence at trial, and the denial of counsel at a preliminary hearing have been held properly subject to harmless-error analysis.[18] The Court of Criminal Appeals recognizes, as of course it must, the concept of "structural" error in violation of federal constitutional rights, and has held that only such errors are categorically beyond the application of the harmless error rule, and otherwise the rule should be applied unless meaningful analysis is impossible.[19]

■ From what the Supreme Court has said, we conclude that an error in shackling a criminal defendant during trial is not a structural defect in the trial mechanism defying "harmless error" analysis. As we have noted, while the Supreme Court has warned against shackling a criminal defendant in sight of the jury, it has never held

such error to require reversal irrespective of its effect on the judgment. If the Fourteenth Amendment does not prevent the application of the "harmless error" rule to shackling in criminal cases, then we do not see how it can be held to do so in civil cases, even those involving matters as important as the parent-child relationship. The error is not one that "def[ies] analysis by 'harmless error' standards", as the present case illustrates. While we agree with the court of appeals that judgments terminating the parent-child relationship must be carefully scrutinized because of the importance of that relationship,[20] we cannot conclude that the Fourteenth Amendment requires reversal of the judgment in this case without regard to harm.

■ We have no difficulty in concluding, as the court of appeals unanimously did, that shackling Rodriguez did not affect the jury's decision. We agree with the court of appeals that the evidence supporting termination was clear and convincing. The members of the jury indicated during voir dire that they would consider all of the evidence and not reach a finding based solely on Rodriguez's conviction and sentence. If the jury could do this, we must assume, absent any evidence to the contrary, that they could also follow the trial court's instruction and draw no improper conclusions from seeing Rodriguez sitting

15. *Fulminante*, 499 U.S. at 309, 111 S.Ct. 1246.

16. *Id.* at 310, 111 S.Ct. 1246.

17. *Id.*

18. *Id.* at 306–307, 111 S.Ct. 1246.

19. *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim.App.1997); *see* TEX.R.APP. P. 44.2.

20. *M.L.B. v. S.L.J.*, 519 U.S. 102, 116–117, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996)

("M.L.B.'s case, involving the State's authority to sever permanently a parent-child bond, demands the close consideration the Court has long required when a family association so undeniably important is at stake."); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985) ("termination proceedings should be strictly scrutinized"); *In re G.M.*, 596 S.W.2d 846, 846 (Tex.1980) (stating that proceedings to involuntarily terminate a parent-child relationship "must be strictly scrutinized").

in handcuffs.[21] Nothing in the record even hints that they would have reached a different verdict had they not seen Rodriguez in shackles.

Accordingly, the Court grants the Department's petition for review, and without hearing argument, reverses the judgment of the court of appeals and renders judgment for the Department. Tex.R.App. P. 59.1.

---

**21.** See *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982); *Duncan v. Smith,* 393 S.W.2d 798, 805 (Tex. 1965); *Walker v. Texas Employers' Ins. Ass'n,* 155 Tex. 617, 291 S.W.2d 298, 302 (1956); *Waldo v. State,* 746 S.W.2d 750, 752 (Tex. Crim.App.1988).