COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-236-CV

 

 

IN THE INTEREST OF L.A., A.R., S.A.H.,

AND D.S.L.H., CHILDREN                                                                      

 

 

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellants Latacha R. and
Byron H. appeal from the trial court=s order terminating Latacha=s parental rights to her four children, L.A., A.R., S.A.H., and
D.S.L.H., and Byron=s rights to
his two children, S.A.H. and D.S.L.H.  We
affirm.








                             Factual and Procedural Background

L.A., A.R., S.A.H., and
D.S.L.H. are ten, seven, five, and four years of age, respectively.  Latacha is the biological mother of all four
children.  Byron is the biological father
of S.A.H. and D.S.L.H.  Latacha is
married to Izell R.[2]
Latacha and Izell separated in May or June of 2002.  Latacha met Byron in early 2002, and they
began living together in the summer of 2002. 

L.A. suffers from what one
psychologist diagnosed as mild mental retardation, and she has an IQ of 63.[3]  In 2002, when L.A. was four years old, she
made a sexual abuse outcry to her maternal grandmother, Estella B.  Estella testified that L.A. told her that
Byron had touched her Agoochie@ or privates. About a week later, L.A. moved in with Estella=s son, Devarius B., and his girlfriend, Natasha G., in Austin.  Natasha testified that L.A. told her that her
Agoochie@ hurt, that
Byron hurt her, and that she did not want to go back to the Ablue house@ where Byron
lived.  Natasha and Devarius took L.A. to
a Child Advocate Center.  The Department
eventually Aruled out@ the allegation for physical abuse and sexual abuse. 








Eric Franklin, the supervisor
of investigations for Travis County Child Protective Services, testified that
the Department received four other referrals for the family in the eight months
after December 2002.  In February 2004,
the Department received a risk referral regarding allegations that Byron had
sexually abused his ten-year-old biological daughter, who lived in
Montana.  In May 2004, the Department
received another referral regarding Byron=s abuse of one of L.A.=s younger siblings.  The
Department recieved two more referrals in 2005 for physical abuse and physical
neglect.   








In July 2006, Byron=s mother, Salome H., received a voicemail message on which she thought
she heard L.A. crying out for help (a Department caseworker testified that
subsequent analysis of the voicemail showed Salome=s interpretation to be unfounded). 
Concerned about L.A.=s and the other children=s safety, Salome retrieved all four children from Byron=s home. L.A. told Salome that Amy daddy took me in the bedroom and pulled my pants down, . . . he had
a long brown thing between his legs, and he put it in my butt.@  Salome reported L.A.=s outcry to the police.  In a
videotaped interview, L.A. told a Department investigator that Byron told her
to bend over and that he Apoked@ her Abottom@ with an object she called a Aranus.@  When asked by the Department interviewer to
draw a picture of Byron and his penis, she drew the penis separate and detached
from his body.  Latacha consented to a
search of the apartment she shared with Byron, and in the apartment police
found and photographed a vibrator and a dildo. 
The trial court admitted the photographs into evidence over Latacha=s and Byron=s
objections.  Dr. Jamye Coffman, director
of the child abuse program at Cook Children=s Medical Center, testified that L.A. told her that her daddy Aput his penis in [her] butt@; that her mom was just standing there watching; that she told her mom
that it hurt, but her mom didn=t do anything; and that she passed blood with a bowel movement
afterwards. 

Based on L.A.=s outcry, the Department removed the children and placed them with
Byron=s mother.  The State charged
Byron with sexually assaulting L.A. in 2002, and Byron remained in jail
awaiting trial when the termination case went to trial.  A jury found that Latacha and Byron had
endangered the children and that termination was in the children=s best interest, and the trial court terminated their parental rights.








                                             Discussion

1.                 
Admission of photographs of sexual device

Latacha, in her first issue, and Byron, in his
second issue, both argue that the trial court erred by admitting into evidence
two photographs of the dildo police found in their apartment because the danger
of unfair prejudice substantially outweighed the photograph=s probative value.

Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay or needless presentation of cumulative evidence.  Tex.
R. Evid. 403.  A
Rule 403 analysis should include consideration of (1) how probative the
evidence is; (2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way; (3) the time the proponent needs to
develop the evidence; and(4) the proponent=s need for the evidence.  Shuffield
v. State,  189 S.W.3d 782, 787 (Tex.
Crim. App.), cert. denied, ___ U.S. ___ (2006).  When considering photographs admitted over a
Rule 403 objection, the reviewing court should also consider the number of
photographs, the size of the photographs, whether they are in color or black
and white, and the detail shown in the photographs.  Id. (also listing considerations not
applicable here).








The admissibility of
photographs over a challenge is within the sound discretion of the trial
court.   In re J.B.C., 233 S.W.3d
88, 94 (Tex. App.CFort Worth
2007, pet. denied).  Because Rule 403
favors admissibility of relevant evidence, the presumption is that relevant
evidence will be more probative than prejudicial.  Montgomery v. State, 810 S.W.2d 372,
389 (Tex. Crim. App. 1990) (op on reh=g).  The burden is on the
opponent of the proffered evidence to demonstrate the prejudicial attributes of
the evidence and to show how these attributes substantially outweigh the
probative value of the evidence.  Goldberg v. State, 95 S.W.3d 345, 367
(Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d), cert.
denied, 540 U.S. 1190 (2004).








In this case, the photographs
of the dildo found in Latacha and Byron=s apartment was probative evidence that supported L.A.=s outcry that Byron had penetrated her anus with an object she
described as a Aranus.@  The photographs certainly had
the potential to impress the jury in a way that was unfavorable to Latacha and
Byron and possibly indelible, but we cannot say that the impression so formed
would be irrational, particularly in a case where a key question for the jury
was the credibility of L.A.=s testimony that she had been sexually assaulted with a foreign
object.  The Department spent little time
developing the evidence.  As both Latacha
and Byron point out, there was ample testimony about L.A.=s outcry that she had been sexually assaulted with a Aranus,@ and a
police officer described finding the dildo, but the testimony was inadequate to
describe the device itself; this case proves the time-worn cliché that a
picture is worth a thousand words.  Thus,
the Department had a need for the evidence.

One of the photographs is
approximately eight by ten inches and the other is approximately five by seven
inches.  The first photograph was taken
outside a closet and depicts the areas both inside and outside the closet, and
the dildo is just visible though the closet door.  The second photograph presents a wide-angle
view of the closet floor.  In both
photographs, the image of the dildo itself is occupies a small portionCless than one percent of the five by seven and about 1/10 of one
percent of the eight by tenCof the whole photograph.  The
copies filed in this court are black and white; presumably, the original
exhibits are in color, but neither Latacha nor Byron suggest that the color of
the photographs presented a danger of unfair prejudice.

We hold that Latacha and
Byron have failed to show how the photographs= prejudicial attributes outweighed their probative value and that the
trial court did not abuse its discretion by overruling their Rule 403
objections.  We overrule Latacha=s first issue and Byron=s second issue.








2.                 
Legal and Factual Sufficiency

Latacha, in her second issue, and Byron, in his
third issue, challenge the legal and factual sufficiency of the evidence to
support the jury=s
grounds-for-termination and best interest findings.  As grounds for termination, the jury found
that Latacha violated paragraphs (D) and (E) of family code section 161.001(1)
with regard to all four children and that Byron violated the same paragraphs
with regard to S.A.H. and D.S.L.H. 

a.                  
Standard of review

A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758B59, 102 S.
Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  In a termination case, the State seeks not
just to limit parental rights but to end them permanentlyCto divest the parent and child of all legal rights, privileges,
duties, and powers normally existing between them, except for the child=s right to inherit.  TEX. FAM. CODE ANN. ' 161.206(b) (Vernon Supp. 2007); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  We strictly
scrutinize termination proceedings and strictly construe involuntary
termination statutes in favor of the parent. 
Holick, 685 S.W.2d at 20B21; In re E.M.N., 221 S.W.3d 815, 820 (Tex. App.CFort Worth 2007, no pet.).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish at least one ground listed under
subdivision (1) of the statute and must also prove that termination is in the
best interest of the child.  TEX. FAM. CODE ANN. ' 161.001 (Vernon Supp. 2007); In re J.L., 163 S.W.3d 79,
84 (Tex. 2005).  Both elements must be
established; termination may not be based solely on the best interest of the
child as determined by the trier of fact. 
Tex. Dep=t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263
(Tex. 2002).  This intermediate standard
falls between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort Worth 2006, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).








When reviewing the evidence
for legal sufficiency in parental termination cases, we must determine whether
the evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).  We must review all the
evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the fact-finder resolved any
disputed facts in favor of its finding if a reasonable fact-finder could have
done so.  Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could and disregard contrary evidence unless a
reasonable fact-finder could not.  Id.

We must therefore consider
all of the evidence, not just that which favors the verdict.  Id.  But we cannot weigh witness credibility issues
that depend on the appearance and demeanor of the witnesses, for that is the
fact-finder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the fact-finder=s determinations as long as they are not unreasonable.  Id. at 573.








When reviewing the evidence
for factual sufficiency, we must give due deference to the fact-finder=s findings and not supplant the verdict with our
own.  In re H.R.M., 209 S.W.3d
105, 108 (Tex. 2006).  We must determine
whether, on the entire record, a fact-finder could reasonably form a firm
conviction or belief that the parent violated the relevant conduct provision of
section 161.001(1) and that the termination of the parent=s parental rights would be in the best interest of the child.  In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

b.                 
Endangerment as grounds for termination

Paragraph (D) of family code section 161.001(1)
authorizes termination if a parent knowingly placed or knowingly allowed the
child to remain in conditions or surroundings that endanger the child=s physical or emotional well-being, and
paragraph (E) authorizes termination if a parent engaged in conduct that
endangers the child=s
physical or emotional well-being.  Tex. Fam. Code Ann. ' 161.001(1)(D), (E).








Endangerment means to expose
to loss or injury, to jeopardize.  Boyd,
727 S.W.2d at 533; see also In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).
Under subsection (D), it is necessary to examine evidence related to the
environment of the child to determine if the environment was the source of
endangerment to the child=s physical
or emotional well-being.  In re D.T.,
34 S.W.3d 625, 633 (Tex. App.CFort Worth 2000, pet. denied). 
Conduct of a parent in the home can create an environment that endangers
the physical and emotional well‑being of a child.  In re W.S., 899 S.W.2d 772, 776
(Tex. App.CFort Worth
1995, no writ).  For example, abusive or
violent conduct by a parent or other resident of a child=s home may produce an environment that endangers the physical or
emotional well‑being of a child.  See
id. at 776B77; Ziegler
v. Tarrant County Child Welfare Unit, 680 S.W.2d 674, 678 (Tex. App.CFort Worth 1984, writ ref=d n.r.e.). 








Under subsection (E), the
relevant inquiry is whether evidence exists that the endangerment of the child=s physical well-being was the direct result of the parent=s conduct, including acts, omissions, or failures to act.  In re R.D., 955 S.W.2d 364, 368 (Tex.
App.CSan Antonio 1997, pet. denied); Dupree v. Tex. Dep=t of Protective &
Regulatory Servs., 907 S.W.2d 81, 83B84 (Tex. App.CDallas 1995,
no writ).  Additionally, termination
under section 161.001(1)(E) must be based on more than a single act or
omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  Tex. Fam. Code Ann. ' 161.001(1)(E); D.T., 34 S.W.3d at 634; In re K.M.M.,
993 S.W.2d 225, 228 (Tex. App.CEastland 1999, no pet.).  Under
either subsection (D) or (E), it is not necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury.  Boyd, 727 S.W.2d at
533.   

Because the evidence
concerning these two statutory grounds for termination is interrelated, we
consolidate our examination of it.  See In re J.T.G, 121 S.W.3d 117, 126 (Tex.
App.CFort Worth 2003, no pet.); 
In re B.R., 822 S.W.2d 103, 106 (Tex. App.CTyler 1991, writ denied) (recognizing the link between a parent=s conduct and a child=s conditions and surroundings). 

i.                    
Grounds for termination: Latacha








Latacha argues that the evidence is legally and
factually insufficient to support the jury=s
paragraph (D) and (E) endangerment findings because she testified that she knew
nothing about Byron=s abusing
L.A.  Latacha testified that she did not
learn of L.A.=s 2002
outcry until June 2003.  She testified
that when she did learn of L.A.=s
outcry, she asked both L.A. and Byron about the alleged abuse; she testified
that they both denied that anything had happened.  On the other hand,  Dr. Jamye Coffman testified that L.A. told
her that Latacha watched as Byron abused her, that she told Latacha that it
hurt, and that Latacha did nothing in response. 
We must defer to the jury=s
determinations of the credibility of the witnesses, the weight to be given the
testimony, and the resolution of evidentiary conflicts.  City of Keller v. Wilson, 168 S.W.3d
802, 819, 822 (Tex. 2005).  A reasonable
jury could have formed the firm belief or conviction that Latacha witnessed or
knew about the abuse and did nothing to stop it.  We therefore hold that the evidence is both
legally and factually sufficient to support the jury=s
endangerment findings.








In addition, Daniel Green, a psychotherapist who
provided counseling services to Latacha as part of her service plan, testified
that she told him that she had Arelapsed@ and used marijuana and cocaine after
the Department removed her children. 
Department caseworker Tikishia Lusk-Wilkerson likewise testified that
Latacha tested positive for cocaine and marijuana a few months before trial and
that Latacha said that she did not consider marijuana to be a drug.  A parent=s
decision to engage in illegal drug use during the pendency of a termination
suit, when the parent is at risk of losing a child, supports a finding that the
parent engaged in conduct that endangered the child=s
physical or emotional well‑being.  In
re R.H., No. 02‑06‑00130‑CV, 2006 WL 3627176, at *4 (Tex.
App.CFort
Worth Dec. 14, 2006, no pet.) (mem. op.); In re J.J.O., No. 02‑03‑00267‑CV,
2004 WL 966317, at *4 (Tex. App.CFort
Worth May 6, 2004, no pet.) (mem. op.). 
Latacha denied having used cocaine and testified that she only told
Green that she had tested positive for cocaine, not that she had relapsed.  Again, the jury was free to believe Green and
Lusk-Wilkerson and disbelieve Latacha.  See
City of Keller, 168 S.W.3d at 819, 822. 
We hold that the evidence of Latacha=s
drug use during the pendency of the termination suit is also legally and
factually sufficient to support the jury=s
endangerment findings.  We overrule the
portion of Latacha=s second
issue that pertains to the jury=s
findings on grounds for termination.

ii.                  
Grounds for termination: Byron

Byron argues that the evidence is legally and
factually insufficient to support the jury=s
endangerment findings because there is no evidence that he sexually abused his
biological children, S.A.H. and D.S.L.H. 
It is beyond question that sexual abuse is conduct that endangers a
child=s physical
or emotional well‑being.  In re
R.W., 129 S.W.3d 732, 742 (Tex. App.CFort
Worth 2004, pet. denied).  Evidence of
sexual abuse of one child is sufficient to support a finding of endangerment
with respect to other children.  Id.  Most of the evidence at trial concerned
the allegations that Byron sexually abused L.A. 
We therefore hold that the evidence was legally and factually sufficient
to support the jury=s
endangerment findings with regard to Byron, and we overrule his third and
fourth issues.








c.                  
Best interest

Prompt and permanent
placement of the child in a safe environment is presumed to be in the child=s best interest.  Tex. Fam. Code Ann. ' 263.307(a) (Vernon 2002). 
There is also a strong presumption that keeping a child with a parent is
in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future;

 

(3)    the emotional and physical danger to the child now and in the
future;

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or
omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).








These factors are not
exhaustive; some listed factors may be inapplicable to some cases; other
factors not on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.

i.                  
Best interest:  Latacha

Ruth Ann Patsel, a
court-appointed special advocate who attended some but not all of the
supervised visitations, testified that she saw very little interaction between
Latacha and the children during the visitations.  Latacha appeared happy to see the boys but
had little to do with the girls.  She
occasionally brought gifts for the children but usually for just the boys.  She allowed S.A.H. to bully the other
children and take toys away from them. 
Patsel testified that the girls were not strongly bonded to
Latacha.  

Caseworker Lusk-Wilkerson
testified that Latacha refused to attend non-offender sexual abuse classes and
was discharged from a CATS drug treatment program for noncompliance. 








Jacqueline H.CByron=s auntCtestified that Latacha is doting, playful, and very affectionate
towards the children.  She said that the
children cried for Latacha when she was absent. 
Latacha=s mother
testified that Latacha is a caring and loving mother who can be
protective.  Byron=s mother testified that the children were bonded to Latacha. 

Latacha testified that she
doubted that Byron sexually abused L.A. because Latacha=s mother was living with them at the time of the alleged abuse; but
she also admitted that she, herself, had been sexually assaulted as a minor
when living in her mother=s home and
had ultimately been placed in foster care. 
Green, the psychologist who counseled Latacha, testified that Latacha
was supportive of Byron and that she said she would stand by him until the
State proved that he sexually abused L.A. 
Latacha said that she was no longer in a relationship with Byron and
would not resume it if Byron were released from custody.  She denied that the two had exchanged letters
while Byron was in jail, but she later spoke of writing to him in jail.  Latacha testified that she allows people with
whom she is comfortable to be around her children, and she said she was
comfortable around Byron. 








Considering the evidence
relevant to the Holley factors, we hold that a fact-finder could rationally
have formed a firm belief or conviction that termination of Latacha=s parental rights is in the children=s best interest; therefore, the evidence is legally sufficient to support
the jury=s best-interest findings. 
Considering all of the evidence, including the evidence that contradicts
the jury=s best-interest findings, we hold that it is also factually
sufficient.  We therefore overrule the
remainder of Latacha=s second
issue.

ii.                  
Best interest: Byron[4]

Patsel testified that during supervised
visitations, Byron had very little to do with the children and once spent
three-quarters of a visitation reading a magazine.  Lusk-Wilkerson testified that he refused to
attend sex offender counseling classes. 
He attended only three parenting classes (due to lack of cooperation,
not because his incarceration prevented his attendance) and did not submit to a
psychological evaluation.  Like Latacha,
he was discharged from a CATS drug treatment program for noncompliance. 

Latacha testified that prior to the children=s removal, Byron was the main economic
provider for the family.  But when asked
about his relationship with the children, she testified, AReally, he semi-played with them
sometimes, but most of the time he was . . . in his back room messing with@ his music records and turntables.   








Considering all of the
evidence relevant to the Holley factors, including the evidence that
contradicts the trial court=s best-interest findings, we hold that a fact-finder could rationally
have formed a firm belief or conviction that termination of Byron=s parental rights is in S.A.H.=s and D.S.L.H.=s best
interest; therefore, the evidence is factually sufficient to support the jury=s best-interest findings.  We
therefore overrule Byron=s fifth
issue.

3.                 
Denial of Byron=s
motion to appear in personal clothing and without restraints

 

ByronCwho
was awaiting trial on sexual assault charges stemming from L.A.=s outcryCappeared
throughout the trial of this case in a prison jumpsuit and leg shackles.  In his first issue, Byron argues that the
trial court abused its discretion by denying his motion to appear in personal
clothing and without restraints.  The
Department tacitly concedes that the trial court erred by compelling Byron to
appear in shackles and prison garb but argues that the error was harmless.








The issue of shackling a party during trial
naturally arises more often in criminal cases. The United States Supreme Court
has admonished that a criminal defendant should not be shackled in the sight of
the jury except as Aa last
resort.@  Illinois v. Allen, 397 U.S. 337, 344,
90 S. Ct. 1057, 1061 (1970).  Our court
of criminal appeals has echoed that shackling should be avoided Aexcept where there has been a showing
of exceptional circumstances or a manifest need for such restraint.@ 
Long v. State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991), cert.
denied, 505 U.S. 1224 (1992).  A
trial judge must set forth with specificity the reasons supporting the decision
to restrain the defendant.  Cooks v.
State, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992), cert. denied, 509
U.S. 927 (1993).

Compelling a defendant to appear for trial in
prison clothes is similarly disfavored.  AIf a defendant objects to being put to
trial while dressed in prison clothes, he should not be compelled to stand
trial in that attire.@  Randle v. State, 826 S.W.2d 943, 944B45 (Tex. Crim. App. 1992).  Compelling a defendant to appear in jail
clothes during trial bears the indicia of incarceration that subvert a
defendant=s right
to a presumption of innocence.  Scott
v. State, 80 S.W.3d 306, 307 (Tex. App.CFort
Worth 2002, no pet.).  

When a trial court erroneously compels a
respondent in a parental-rights termination case to appear in shackles, the
reviewing court must apply the harmless error rule.  In re K.R., 63 S.W.3d 796, 800 (Tex.
2001), cert. denied, 536 U.S. 941 (2002).  AIf
the Fourteenth Amendment does not prevent the application of the >harmless error= rule to shackling in criminal cases,
then we do not see how it can be held to do so in civil cases, even those
involving matters as important as the parent‑child relationship.@ 
Id.








In In re K.R., the trial court, without
stating its reasons in the record, compelled the respondent fatherCwho had been convicted of reckless
injury to a child that resulted in the death of one of his two childrenCto remain handcuffed throughout the
parental-rights termination trial.  Id.
at 798.  The trial court instructed
the jury not to infer anything from the fact that the father was handcuffed
other than the fact that he had been convicted of an unspecified crime
requiring incarceration.  Id.  The supreme court applied the harmless error
rule and concluded that Awe
must assume, absent any evidence to the contrary, that [the jury] could . . .
follow the trial court=s
instruction and draw no improper conclusions from seeing [the father] sitting
in handcuffs.  Nothing in the record even
hints that they would have reached a different verdict had they not seen [the
father] in shackles.@  Id. at 800B01.

In this case, the trial court apparently
considered and denied at a pretrial hearing Byron=s
motion to appear in street clothes and without shackles; there is no record of
the hearing or the trial court=s
ruling.  On the first day of trial, Byron
briefly re-urged his motion to the visiting judge who tried the case.  No other party offered argument on the
motion, and the trial court denied the motion without explaining why
exceptional circumstances or a manifest need justified Byron=s restraint during trial.  In the absence of any such explanation, and
none being apparent from the record, we hold that the trial court erred by
requiring Byron to appear in prison garb and shackles.  See Cooks, 844 S.W.2d at 722.








We must now determine whether the error harmed
Byron.  See In re K.R., 63 S.W.3d
at 800.  Unlike In re K.R., the
trial court in this case did not instruct the jury regarding what inferences it
could or could not draw from the fact that Byron was shackled and wearing a
jail jumpsuit.  But during voir dire, his
counsel made the following explanation to the panel:

I guess we should talk about the elephant in the
room before we go any further.  My client
is wearing a green jumpsuit. . . . My client has not been convicted of
anything.  He=s
not in, he=s not in
the Texas Department of Criminal Justice. 
He=s not
been convicted.  He is innocent.  He is, however, poor.  He cannot make bail, so he sits here today in
a green jumpsuit. . . . He=s
not had a criminal day in court, okay? 
That has not happened in this case. 
There has, however, been an accusation, and ultimately, . . . the reason
we are here is because of that accusation. 
They do go hand in hand. 

 

We have already considered the evidence presented
at trial and determined that it is legally and factually sufficient to support
the jury=s verdict
with regard to Byron=s
parental rights.  As in In re K.R.,
nothing in the record suggests that the jury would have arrived at a different
verdict had they not seen Byron in shackles and jail garb.  We therefore hold that the trial court=s error in requiring him to do so was
harmless, and we overrule his first issue.

 

 

 








4.                 
Conclusion

Having overruled all of Latacha=s and Byron=s
issues, we affirm the trial court=s
termination order.

PER CURIAM

 

PANEL F:    GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DELIVERED:
May 22, 2008











[1]See Tex. R. App. P. 47.4.





[2]Izell
is the presumed father of A.R., S.A.H., and D.S.L.H.  The trial court terminated Izell=s
parental rights, and Izell did not appeal the trial court=s
order.





[3]But
L.A.=s
special-needs teacher testified that L.A. scored a 74 on another IQ test, which
is four points above the cutoff for mental retardation.  





[4]Byron
challenges only the factual sufficiency of the evidence to support the jury=s
best-interest findings.