# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-10-00052-CV

---

**William Joseph Rader and Michelle Lea Klotz, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-08-0049-CPS, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from a decree terminating the parental rights of appellants William Joseph Rader and Michelle Lea Klotz. Klotz's parental rights were terminated as to her children R.J.D., D.D.K., J.L.R., and E.J.M.R. Rader's parental rights were terminated as to his children, J.L.R. and E.J.M.R. In her sole issue on appeal, Klotz challenges the admission of R.J.D. and E.J.M.R.'s therapist's notes on hearsay grounds. Rader's counsel has filed a motion to withdraw as counsel and a brief in support of that motion. We affirm the trial court's decree terminating Klotz's and Rader's parental rights and grant Rader's counsel's motion to withdraw.

## BACKGROUND

Klotz is the mother of six children. The four youngest children, R.J.D., D.D.K., J.L.R., and E.J.M.R., are the subjects of this termination proceeding. When the children were removed, R.J.D. was fifteen years old, D.D.K. was eleven, J.L.R. was seven, and E.J.M.R. was five.

Rader is the biological father of J.L.R. and E.J.M.R. but cared for all four children prior to their removal. Though Klotz and Rader were never married, they maintained a relationship for approximately ten years, separating in December 2008.

The Department initiated this case on January 24, 2008 when it received a referral communicating concerns that Klotz, who had recently been released from the hospital for suicidal thoughts, was a "loose cannon," and that her children may be in danger. The report also stated that Klotz's oldest son, J.D., age nineteen at the time of his siblings' removal, had sexually assaulted his younger brothers J.M., age sixteen at the time of his siblings' removal, and D.D.K. in 2002 and that Klotz and Rader were aware of the assaults but did not report them.[1]

The Department took possession of the children on March 13, 2008 and placed them in a group home. The Department changed its permanency goal from reunification to termination in December 2008, citing Rader's and Klotz's insufficient progress following the removal of the children. A bench trial was held concerning the termination of Klotz's parental rights as to R.J.D., D.D.K., J.L.R., and E.J.M.R. and Rader's parental rights as to J.L.R. and E.J.M.R.

At trial Rader testified that in 2002, R.J.D. notified him that she had seen J.D. engage in sexually inappropriate acts with J.M. and D.D.K. in the family home. Upon Rader's inquiry, J.M. and D.D.K. admitted that J.D. had abused them. Rader testified that he told Klotz of the incident and that Klotz chastised J.D., but instructed Rader and the children not to tell anyone.[2] Rader also

---

[1] J.D. was not a minor at the inception of this case, and J.M. had a separate history with the Department.

[2] Barbara Cockerell, the Department investigator, and Barbara Hecht, R.J.D. and E.J.M.R.'s therapist, also testified that the children told them about this incident.

testified that R.J.D. made an outcry to the Department that, on a separate occasion, J.D. forced her to smoke methamphetamine and then sexually abused her. Klotz testified that she did not believe R.J.D.'s outcry and that she believes her children were "brainwashed" and lied about many of the events brought up at trial.

Rader further testified that shortly before the Department referral, Klotz asked Rader to put all of the children in her car so that she could take them out to a "last supper" before she committed suicide. Klotz admitted that she wanted to take her children out to dinner and planned on driving her car into a tree afterward, but testified that she did not intend to harm the children. Following this incident, Klotz entered a hospital for treatment. Upon release from the hospital, Klotz announced that she intended to bring the children with her to Crane, Texas to live with her new boyfriend, who had been a fellow patient at the hospital. Klotz admitted at trial that she did not begin consistently taking her medications for bipolar disorder until December 2008. She testified that prior to December 2008, she would stop taking her medication when she felt she was "doing better."

According to Rader, Klotz was also physically abusive. Rader testified that Klotz repeatedly attempted to run him over with her car. On one occasion, Rader claimed that Klotz hit him in the leg with her car while the children were watching. Rader further testified that Klotz intentionally drove recklessly while the children were in the car in order to scare them and that her behavior made J.L.R. so afraid that he vomited.[3] Rader contended that Klotz hit him several times

---

[3] Hecht also testified that R.J.D. told her about this incident.

over their ten-year relationship, at times when the children were present. He stated that he lived in the garage or storm cellar of their house in order to avoid Klotz.

The children were also witnesses to an altercation, according to Rader, in which Rader pulled Klotz off of J.M. by her hair because she had beaten and choked J.M. until he began spitting up blood.[4] Rader stated that he called the police, but that Klotz ran away before they arrived.

Finally, Rader testified that Klotz, over his objection, invited her father Billy Mason, a registered sex offender, to live with Klotz, Rader, and the children. Mason became a registered sex offender after being convicted of repeatedly sexually abusing Klotz when she was a teenager and young adult. Mason lived with the family for approximately six months. Rader testified that he never left the children alone with Mason.

Rader and Klotz also testified regarding their violations of the Department's family service plan. Klotz admitted that, though the family service plan ordered her to pay $260 per month in child support beginning May 1, 2008, she made no payments. She also admitted that she was arrested for harassment of an ex-boyfriend in violation of the plan. Rader admitted to using methamphetamine on December 31, 2007 and failing a subsequent drug test, but testified that he had not used illegal drugs since. Rader also admitted to being arrested in 2008 for placing a non-emergency 911 call.

At the time of trial, R.J.D. and E.J.M.R. lived together in a children's home and D.D.K. and J.L.R. each lived in separate foster facilities. According to Hecht, R.J.D. and E.J.M.R.'s

---

[4] Hecht testified that R.J.D. and E.J.M.R. both claimed they witnessed this event.

therapist, and Connie Gauwain, the children's court-appointed advocate, R.J.D., D.D.K., and E.J.M.R. all communicated that they would like their parents' rights to be terminated.

After hearing the evidence, the trial court found that Klotz and Rader each (1) knowingly placed or knowingly allowed the children to remain in conditions that endangered the physical and emotional well-being of the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, and (3) failed to comply with the provisions of a court order establishing the actions necessary for the return of the children, who had been in the custody of the Department for over nine months. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West Supp. 2010). The trial court further found that termination of the parent-child relationships between Klotz and R.J.D., D.D.K., J.L.R., and E.J.M.R. and between Rader and J.L.R. and E.J.M.R. was in the best interest of the children. *See id.* § 161.001(2). It subsequently issued a decree terminating Klotz's and Rader's parental rights. Klotz and Rader now appeal.

**DISCUSSION**

*William Joseph Rader*

Rader's court-appointed attorney filed a motion to withdraw and an accompanying brief concluding that Rader's appeal is frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See also Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin

5

2005, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). Counsel has certified that she has provided Rader with a copy of the *Anders* brief, along with a notice advising Rader of his right to examine the appellate record and to file a pro se brief. No pro se brief has been filed.

We have carefully reviewed the appellate record and counsel's brief and agree that the appeal is frivolous and without merit. We find nothing in the record that might arguably support the appeal. *See Bledsoe v. State*, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005). Counsel's motion to withdraw is granted.

*Michelle Klotz*

In her sole issue on appeal, Klotz challenges the admission of the therapy notes and records from Hecht, R.J.D. and E.J.M.R.'s therapist, because they contain hearsay statements made by the children during therapy.[5]

Hearsay evidence is inadmissible unless it falls within an exception provided by a statute or the rules of evidence. *See* Tex. R. Evid. 802. Under one exception, a hearsay statement made "for purposes of medical diagnosis or treatment" may be admissible, Tex. R. Evid. 803(4), provided that (1) the declarant knew that the statement was made for the purpose of receiving treatment and (2) the substance of the statement was pertinent to treatment. *See Taylor v. State*, 268 S.W.3d 571, 589, 591 (Tex. Crim. App. 2008); *see also Calderon v. Texas Dep't of Family &*

---

[5] We note that Rader does not appeal the admission of these therapy notes, presumably because the statements contained therein are relatively positive as to Rader. During his closing argument, Rader's attorney pointed out a number of instances within Hecht's notes where R.J.D. and E.J.M.R. made favorable comments about Rader.

*Protective Servs.*, No. 03-09-00257-CV, 2010 Tex. App. LEXIS 4408, at *21-22 (Tex. App.—Austin June 22, 2010, no pet.) (mem. op.) (applying this two-step analysis to admissibility of therapy notes in termination proceeding).[6]

We need not determine the extent to which Hecht's notes comply with rule 803(4) or any other hearsay exception, however, because even assuming the therapy records were inadmissible hearsay, any error in their admission was harmless. To be entitled to reversal due to the erroneous admission of evidence, an appellant must show that the error probably resulted in an improper judgment. *See* Tex. R. App. P. 44.1(a); *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In making this determination, the court must review the entire record. *Central Expressway*, 302 S.W.3d at 870. The admission of the challenged evidence is harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Id.*; *see also In re K.R.*, 63 S.W.3d 796, 800-01 (Tex. 2001) (recognizing that error in evidentiary ruling during termination case is subject to "harmless error" test).

Klotz argues that Hecht's notes "contained a large quantity of evidence relative to the court's best interest determination" and that, had the notes not been admitted, insufficient evidence would support the trial court's finding that termination of Klotz's parental rights was in the children's best interest. We disagree. First, much of the evidence contained in Hecht's therapy notes

---

[6] Though the Department alternatively argued at trial that the therapy notes were admissible to prove the children's state of mind, the trial court specifically explained, "I'm not overruling them on the grounds that the statements . . . exhibit the state of mind of these children." Instead, he based his ruling on the fact that the records were "statements made to a medical provider for the purposes of [proper treatment]."

was cumulative of the testimony already given by Rader, Cockerell, and Hecht prior to the admission of the notes.[7] *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) ("[E]rroneous admission [of evidence] is harmless if it is merely cumulative."); *Mauzey v. Sutliff*, 125 S.W.3d 71, 80 (Tex. App.—Austin 2003, pet. denied) (determining that cumulative nature of testimony renders error harmless); *see also Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (expressing general rule that error in admission of evidence is harmless if objecting party permits same or similar evidence to be introduced without objection).  Second, even without Hecht's notes, ample evidence exists to support the trial court's best-interest finding.

The best interest of the children is assessed using a non-exhaustive list of factors. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors include (1) the children's wishes, (2) their emotional and physical needs now and in the future, (3) emotional or physical danger to the children now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the children by the parties seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct indicating that the parent-child relationship is improper, and (9) any excuses for the parent's conduct. *Id*. at 372.  A party seeking involuntary termination of parental rights need not prove all nine *Holley* factors as a "condition precedent" to termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a

---

[7] Hecht's therapy notes primarily contained R.J.D.'s and E.J.M.R.'s accounts of the various family incidents described above and their desires that parental rights be terminated so that they could be adopted.  We note that though Klotz challenges the admission of Hecht's therapy notes on appeal, she does not appeal the admission of any statements contained in Hecht's or any other witness's testimony.

8

finding that termination is in the best interest of the children. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.). The same evidence of acts or omissions used to establish grounds for termination may be probative in determining the best interests of the child. *C.H.*, 89 S.W.3d at 28.

Cockerell testified that all four children feared their mother. Hecht's and Gauwain's testimony also established that R.J.D., D.D.K., and E.J.M.R. did not want to return to Klotz and expressed a desire that her parental rights be terminated. Gauwain testified that R.J.D. and E.J.M.R. were doing "great" in their placements, that D.D.K. was doing "well," that J.L.R. was doing "fairly well," and that all four children had shown progress since coming into the Department's care. Cockerell stated that Rader and Klotz each told her that the children would be better off in foster care than in the custody of the other parent.

Further, a fact finder may measure a parent's future conduct by her past conduct and determine that it is in a child's best interest to terminate her parental rights. *See Castorena v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-02-00653-CV, 2004 Tex. App. LEXIS 3753, at *31-32 (Tex. App.—Austin Apr. 29, 2004, no pet.) (mem. op.) (citing *Davis v. Travis County Child Welfare Unit*, 564 S.W.2d 415, 421 (Tex. Civ. App.—Austin 1978, no writ)); *see also Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."). Further, a fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

Evidence of Klotz's past conduct, proved through the testimony of Rader, Klotz, Cockerell, Hecht, and Joe Bentley, a Department caseworker, supports the inference that Klotz

9

would be unable to meet her children's physical and emotional needs or provide a stable home environment were the children returned to her care. Klotz's troublesome past conduct includes: (1) making suicidal threats in front of her children, (2) allegedly physically abusing Rader by attempting to run him over with her car, (3) choking J.M. until he spit up blood, (4) failing to report J.M.'s and D.D.K.'s allegations of abuse by J.D., (5) instructing Rader and her children not to report the abuse by J.D., (6) allowing her father, a registered sex offender who had previously abused her, to live in the home with the children, (7) failing to regularly take her bipolar medication, (8) purposely driving recklessly to scare the children, (9) failing to provide child support payments to the children, and (10) believing that the children were "brainwashed" and lying about their past traumas.

Excluding Hecht's therapy notes and considering only the remaining evidence, we hold that the trial court could have reasonably concluded that terminating Klotz's parental rights was in the best interest of the children. *See, e.g.*, *Liu v. Texas Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 799 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (affirming termination where parent failed to take medication for mental illness); *In re L.C.*, 145 S.W.3d 790, 799-800 (Tex. App.—Texarkana 2004, no pet.) (affirming termination of mother's parental rights to five children where mother disbelieved one child's report of sexual abuse by family member and failed to provide emotional support for abused child); *see also Middleton v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-03-00766-CV, 2005 Tex. App. LEXIS 3586, at *42-43 (Tex. App.—Austin May 12, 2005, pet. denied) (mem. op.) (affirming termination when parent physically abused children in front of their siblings). Therefore, the admission of Hecht's therapy notes likely

10

made no difference in the judgment.  *See Central Expressway*, 302 S.W.3d at 870.  We overrule Klotz's sole issue on appeal.

**CONCLUSION**

Because we have overruled Klotz's issue on appeal and determined that Rader's appeal is frivolous and without merit, we grant Rader's appellate counsel's motion to withdraw and affirm the trial court's order terminating the parent-child relationships between Klotz and R.J.D., D.D.K., J.L.R., and E.J.M.R. and between Rader and J.L.R. and E.J.M.R.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   June 15, 2011