# NO. 12-12-00317-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *R.L.A., IV, AND T.A.,* | § | *COUNTY COURT AT LAW* |
| *CHILDREN* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.V.Z. and R.L.A., III appeal the termination of their parental rights. In two and ten issues respectively, D.V.Z. and R.L.A., III challenge the order of termination. We affirm.

## BACKGROUND

R.L.A., III is the father of two children, R.L.A., IV, born May 26, 1999, and T.A., born October 31, 2010. D.V.Z. is the mother of R.L.A., IV, and T.M.J.[1] is the mother of T.A. T.M.J. is not a party to this appeal. On October 11, 2011, the Department of Family and Protective Services (the Department) filed original petitions for protection of each child, for conservatorship, and for termination of R.L.A., III's and D.V.Z.'s parental rights. The Department was appointed the children's temporary managing conservator.

After a jury trial, the jury found, by clear and convincing evidence, that R.L.A., III had

> knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings that endanger[ed] the physical or emotional well being of the child[ren];
>
> engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct that endanger[ed] the physical or emotional well being of the child[ren]; or

---

[1] On April 25, 2012, T.M.J. signed an unrevoked or irrevocable affidavit of voluntary relinquishment of parental rights to the Department of Family and Protective Services. Accordingly, on July 9, 2012, the trial court ordered the termination of her parent-child relationship with T.A.

constructively abandoned the child[ren] who [have] been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and (i) the Department or an authorized agency has made reasonable efforts to return the child[ren] to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child[ren]; and (iii) the parent has demonstrated an inability to provide the child[ren] with a safe environment.

Further, the jury found that termination of the parent-child relationship between R.L.A., III and the children was in the children's best interests. Based on these findings, the trial court ordered that the parent-child relationship between R.L.A., III and the children be terminated.

The jury also found, by clear and convincing evidence, that D.V.Z. had

knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger[ed] the physical or emotional well being of the child;

engaged in conduct or knowingly placed the child with persons who engaged in conduct that endanger[ed] the physical or emotional well being of the child;

constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and (i) the Department or an authorized agency has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment; or

knowingly engaged in criminal conduct that resulted in the parent's (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.

Further, the jury found that termination of the parent-child relationship between D.V.Z. and R.L.A., IV. was in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between D.V.Z. and R.L.A., IV. be terminated. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In her first issue, D.V.Z. contends that the evidence is legally insufficient to support the jury's finding that termination of the parent-child relationship was in R.L.A., IV's best interest. A no evidence point is preserved through one of the following: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex.

1992). D.V.Z. did not file a motion for instructed verdict regarding the best interest, a motion for new trial, or any of the other motions necessary to preserve her legal sufficiency challenge. Therefore, she has waived her right to complain about the legal sufficiency of the evidence to support the jury's findings on best interest.

In his tenth issue, R.L.A., III argues that the evidence is factually insufficient to support the jury's finding that his parental rights to R.L.A., IV and T.A. should be terminated.[2] A point in a motion for new trial is a prerequisite to a complaint of factual insufficiency of the evidence to support a jury finding. *In re A.J.L.*, 136 S.W.3d 293, 301 (Tex. App.—Fort Worth 2004, no pet.); TEX. R. CIV. P. 324(b)(2). R.L.A., III did not file a motion for new trial. Therefore, he has waived the right to complain about the factual sufficiency of the evidence to support the jury's findings.[3]

We overrule D.V.Z.'s first issue and R.L.A., III's tenth issue.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his first, second, third, fourth, fifth, and sixth issues, R.L.A., III argues that his trial counsel rendered ineffective assistance. More specifically, R.L.A., III contends that his trial counsel failed to (1) object to opinion testimony from a Department investigator regarding drug identification, (2) object to opinion testimony from the CASA representative regarding the best interests of the children, (3) request a *Daubert* hearing prior to or during trial regarding the qualifications and opinions of two alleged expert witnesses, (4) urge numerous hearsay and extraneous offense objections, and seek limiting instructions for the testimony that fell within exceptions to the hearsay rule, and (5) request limiting instructions in the charge of the court. In his sixth issue, he urges that the deficient performance of trial counsel had the cumulative effect of resulting in the entry of an improper judgment terminating his parental rights.

**Standard of Review**

In reviewing an ineffective assistance of counsel claim in a parental rights termination case, we follow the United States Supreme Court's two pronged test in *Strickland v.*

---

[2] In his initial statement of this issue, R.L.A., III appears to challenge the legal and factual sufficiency of the evidence. However, his brief contains arguments and citations to authorities pertaining only to factual sufficiency.

[3] There is no claim that failure to preserve error was unjustifiable or the result of ineffective assistance of counsel. *See In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005).

*Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must show that counsel's representation fell below an objective standard of reasonableness. *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

It is the appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Tong*, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* An appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence in order to prevail. *Tong*, 25 S.W.3d at 712.

With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a "reasonably effective" manner. *See Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2064-65. The court of criminal appeals has explained that counsel's performance falls below acceptable levels when the "representation is so grossly deficient as to render proceedings fundamentally unfair . . . ." *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983). In this process, we must give great deference to counsel's performance, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

4

assistance," including the possibility that counsel's actions are strategic. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no writ). It is only when "the conduct was so outrageous that no competent attorney would have engaged in it" that the challenged conduct will constitute ineffective assistance. *Garcia*, 57 S.W.3d at 440.

## Analysis

In his first six issues, R.L.A., III identifies certain actions that he contends his trial counsel should have taken at trial. As we discuss below, some of these actions were unnecessary. As to others, R.L.A., III did not show prejudice from the alleged errors.

### 1. Jackie Geer's testimony

In his first issue, R.L.A., III complains that his trial counsel should have objected to Jackie Geer's opinion testimony regarding drugs and drug paraphernalia. Moreover, he contends that his trial counsel should have objected to this testimony as undisclosed expert testimony that was subject to a *Daubert* hearing.

"If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue." TEX. R. EVID. 701. As a general rule, observations that do not require significant expertise to interpret and that are not based on a scientific theory can be admitted as lay opinions if the requirements of Texas Rule of Evidence 701 are met. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).

Rule 701(a) has been said to have two elements. *Harnett v. State*, 38 S.W.3d 650, 657–58 (Tex. App.—Austin 2000, pet. ref'd). The first element involves the personal knowledge of the witness as required by Rule 602. *See id.* at 658*;* TEX. R. EVID. 602. The necessary personal knowledge may be gained by perception of fact by the senses of the witness. *Harnett*, 38 S.W.3d at 658. The second element mandates that the opinion must be one a reasonable person could draw from the underlying facts. *Id*. Under Rule 701, much must be left to the discretion of the trial court. *Id*.; *Austin v. State*, 794 S.W.2d 408, 410 (Tex. App.—Austin 1990, writ ref'd). If the witness perceived events and formed an opinion that a reasonable person could draw from the facts, the first part of the rule is met. *See Hayes v. State*, No. 06-06-00230-CR, 2008 WL 268641, at *5 (Tex. App.—Texarkana Feb. 1, 2008, pet. ref'd) (mem. op.). If the opinion is also

helpful to the trier of fact to understand the witness's testimony or aids in the determination of a fact in issue, the opinion is admissible under Rule 701. *See id.*

On October 6, 2011, Jackie Geer, an investigations supervisor for the Department, was asked to assist law enforcement in a drug raid because there were children at the residence. She stated that when she arrived at the residence, only T.A. was present. She testified that T.A. was asleep on the bed in the master bedroom, and that there were drugs around the baby, "all around the baby." She stated that T.A.'s pacifier was on the night stand next to a can containing white powder. The record shows that in Geer's presence, the officers at the scene searched the master bedroom in which T.A. was sleeping and seized what they believed to be drugs near T.A. Geer did not represent that she personally identified the drugs, and her testimony did not involve a scientific theory. *See Hayes*, 2008 WL 268641, at *5. But she did not need significant expertise to conclude from the actions of the officers that they believed the substances they seized were drugs. *See id*. Additionally, this testimony was helpful to the jury in determining a fact in issue. *See* TEX. R. EVID. 701(b). Therefore, it was within the trial court's discretion to consider Geer a lay witness. *See* TEX. R. EVID. 701. Consequently, counsel cannot be deemed ineffective for failing to object to this testimony as impermissible expert testimony or for failing to request a *Daubert* hearing. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Accordingly, we overrule R.L.A., III's first issue.

As a part of his third issue, R.L.A., III argues that his trial counsel should have requested a *Daubert* hearing for Geer's testimony regarding her conclusions about the contents of documents showing Department and Adult Protective Services (APS) history because she was an expert witness. As part of his fourth issue, R.L.A., III complains that his trial counsel did not request notice of extraneous offenses that would be offered at trial or object to Geer's testimony regarding extraneous offenses allegedly committed by him, T.M.J., and D.V.Z.

At trial, Geer testified that in her investigation of this case, she reviewed the Department's history with R.L.A., III, T.M.J., and D.V.Z. She stated that R.L.A., III's history included an investigation for drug use and dealing involving one of his daughters and grandchildren. Geer testified that R.L.A., III refused to test "through that case," although his daughter tested positive for cocaine and the case was validated. She stated that R.L.A., III also had several APS cases involving elderly people who rented trailers from him. According to Geer, these people were giving R.L.A., III checks in exchange for drugs, and several of these

6

cases were validated for neglect because the people did not have utilities and had not seen a doctor in years. She also stated that in all of the Department and APS cases against R.L.A., III, drugs and selling drugs was a consistent allegation.

Further, Geer stated that upon investigating T.M.J., there were validated drug allegations and prior Department history with her two other children, that T.M.J. had overdosed on drugs twice, and that T.M.J. had been homeless when T.A. was seven months old. Geer also testified that D.V.Z. had a prior Department case in 1997 when she tested positive for cocaine, and validated cases of physical abuse in 1995 and 1996.

First, we address whether Geer was an undisclosed expert whose testimony regarding the Department and APS history of R.L.A., III, T.M.J., and D.V.Z. should have been the subject of a *Daubert* hearing. As discussed above, a lay witness may express opinions if they are "rationally based on the perception of the witness" and "helpful to the clear understanding of the witness'[s] testimony or the determination of a fact in issue." TEX. R. EVID. 701. The record shows that in the course of her investigation in this case, Geer reviewed numerous documents containing information about Department and APS cases relating to R.L.A., III, T.M.J., and D.V.Z. In her testimony, Geer related information from these documents, and her testimony about the contents of the documents was rationally based on the research she performed during her investigation of R.L.A., III, T.M.J., and D.V.Z. on behalf of the Department. *See* TEX. R. EVID. 701(a). It also appears that a reasonable person could have drawn the same conclusions as Geer about the contents of the documents. *See Hayes*, 2008 WL 268641, at \*5. And the testimony aided the jury in determining a fact in issue. *See id*. Therefore, it was within the trial court's discretion to consider Geer a lay witness as to the contents of the documents she reviewed. *See* TEX. R. EVID. 701. Consequently, counsel cannot be deemed ineffective for failing to request a *Daubert* hearing as to Geer.

Regarding the alleged extraneous offenses, R.L.A., III cites Rule 404 of the Texas Rules of Evidence for the proposition that his trial counsel should have requested notice of these offenses. Rule 404(b) states that evidence of other crimes, wrongs, or acts may be admissible for other purposes, "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief." *See* TEX. R. EVID. 404(b). However, this case is not a criminal case. *See In re J.A.P.*, No. 06-08-00092-CV, 2009 WL 839953, at \*2-3 & n.6 (Tex. App.—Texarkana Apr. 1, 2009, no pet.) (mem. op.).

7

Therefore, the notice provision of Rule 404(b) does not apply, and counsel cannot be deemed ineffective for failing to request notice of extraneous offenses pursuant to Rule 404(b).

Moreover, we conclude that this evidence is admissible for the purpose of determining the children's best interests. *See In re K.L.R.*, 162 S.W.3d 291, 305 (Tex. App.—Tyler 2005, no pet.) (evidence of other wrongs or acts was "admissible for the purpose of determining what is in the child's best interest"). In determining the best interest of a child, some of the factors to be considered include the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, and the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Geer's testimony regarding prior Department and APS history of R.L.A., III, T.M.J., and D.V.Z. is relevant to all of these factors and therefore, is relevant in determining the best interests of the children. As such, it was unnecessary for R.L.A., III's trial counsel to object to Geer's testimony about extraneous offenses, and counsel was not ineffective for failing to do so. Accordingly, we overrule that portion of R.L.A., III's third issue pertaining to a *Daubert* hearing, and that portion of R.L.A., III's fourth issue pertaining to extraneous offenses. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

### 2. *Edna Haberle's testimony*

In his second issue, R.L.A., III complains that his trial counsel should have objected to Edna Haberle's opinion testimony regarding R.L.A., IV's best interest. Further, as a part of his third issue, he argues that his trial counsel should have requested a *Daubert* hearing regarding Haberle's testimony because she was an expert witness. Haberle is a case worker supervisor for Cherokee County CASA, which was appointed guardian ad litem in this case in October 2011. According to Section 107.002 of the Texas Family Code, a guardian ad litem appointed for the child shall seek to elicit in a developmentally appropriate manner the child's expressed objectives, and consider those objectives without being bound by them. *See* TEX. FAM. CODE ANN. § 107.002(b)(2) (West 2008). Further, the trial court must ensure that the guardian ad litem had an opportunity to testify regarding its recommendations relating to the best interest of the child and the bases for its recommendations. *See id*. § 107.002(e).

Haberle testified that she interviewed R.L.A., IV, that she formed an opinion about his best interest, and that CASA believed it was in his best interest that he be allowed to remain with his foster parents. She also stated that R.L.A., IV told her that he wanted to stay and live with

8

his foster parents. Further, she believed it was in R.L.A., IV's best interest for R.L.A., III's and D.V.Z.'s parental rights to be terminated. Thus, under Section 107.002 of the Texas Family Code, Haberle's testimony was admissible opinion testimony not subject to a *Daubert* hearing. Therefore, counsel was not ineffective for failing to object to Haberle's opinion testimony and failing to request a *Daubert* hearing. Accordingly, we overrule R.L.A., III's second issue, and that portion of his third issue pertaining to a *Daubert* hearing.

### 3. Presumption of Trial Strategy and Harm

R.L.A., III asserts in part of his fourth issue that his trial counsel improperly failed to urge "numerous hearsay" objections and seek limiting instructions for testimony that was introduced for a limited purpose. In his fifth issue, he contends that trial counsel improperly failed to seek limiting instructions in the jury charge. And finally, in his sixth issue, he urges that the cumulative effect of trial counsel's errors was the rendition of an improper judgment of termination.

Thus far, we have addressed and overruled R.L.A., III's first, second, and third issues and part of his fourth issue, all of which pertain to the performance of his trial counsel. To prevail on his remaining issues on this subject, he must show that counsel's performance fell below an objective standard of reasonableness for his failure to make the hearsay objections and request the limiting instructions R.L.A., III identifies. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He then must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We conclude that R.L.A., III has failed to satisfy the second prong, and therefore we need not address the first.

In his brief, R.L.A., III states that if counsel had provided effective assistance, "the bulk" of the evidence supporting the judgment would have been excluded and therefore the result would have been different. This conclusory allegation does not meet the essential prejudice requirement by showing that there is a reasonable probability that the result of the proceedings would have differed in the absence of counsel's alleged deficient performance. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. Therefore, we cannot conclude that R.L.A., III has satisfied the second prong of *Strickland*. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Accordingly, we overrule R.L.A., III's sixth issue. Because R.L.A., III has

9

not satisfied the second prong of **Strickland**, we overrule that portion of his fourth issue pertaining to hearsay objections and limiting instructions at trial, and his fifth issue

## ADMISSION OF EVIDENCE

In D.V.Z.'s second issue, she contends that the trial court erred by admitting hearsay testimony that could have prejudiced the jury's determination regarding R.L.A., IV.'s best interest. In R.L.A., III's seventh, eighth, and ninth issues, he contends that the trial court erred by admitting hearsay testimony that, in all reasonable probability, resulted in the rendition of an improper judgment terminating his parental rights.

### Standard of Review

We review a trial court's evidentiary rulings for abuse of discretion. **Owens–Corning Fiberglas Corp. v. Malone**, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its actions are arbitrary and unreasonable. **Downer v. Aquamarine Operators, Inc.**, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. **Owens–Corning Fiberglas Corp.**, 972 S.W.2d at 43.

### Applicable Law

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute or the rules of evidence or other rules prescribed pursuant to statutory authority. TEX. R. EVID. 802. The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. **Volkswagen of Am., Inc. v. Ramirez**, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Erroneously admitting evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." **Coble v. State**, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting **Leday v. State**, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)). In other words, an error in the admission of evidence is harmless if substantially the same evidence is admitted elsewhere without objection. *See* **Mayes v. State**, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); **Prieto v. State**, 337 S.W.3d 918, 922 (Tex. App.—

Amarillo 2011, pet. ref'd). Therefore, "counsel must object every time allegedly inadmissible evidence is offered." *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).

Erroneous admission of hearsay is nonconstitutional error. TEX. R. APP. P. 44.2(b); *see Garcia v. State*, 126 S.W.3d 921, 927–28 (Tex. Crim. App. 2004). We must disregard all nonconstitutional errors that do not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). A "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Morales*, 32 S.W.3d at 867 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In determining the likelihood that a jury's decision was adversely affected by the error, an appellate court should consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales*, 32 S.W.3d at 867.

As a predicate to presenting a complaint on appeal, the complaining party must have preserved the error at trial by a proper request, objection, or motion stating the grounds for the ruling that the party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, and then securing a ruling on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a)(1)(A), (2); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). In trials involving multiple respondents, each party must lodge his or her own objection to preserve error. *Beutel v. Dallas Cnty. Flood Control Dist.*, 916 S.W.2d 685, 694 (Tex. App.—Waco 1996, writ denied).

## Objections and Testimony

Jackie Geer, an investigations supervisor for the Department in October 2011, testified that she was involved in an investigation regarding R.L.A., IV and T.A. On October 6, 2011, she was asked to assist law enforcement in a drug raid because there were children at the residence. Geer stated that when she arrived at the residence, only T.A. was present, and that R.L.A., IV

11

had been allowed to dress and go to school. Eventually, she spoke to R.L.A., IV at her office. Then, she was asked if she talked to R.L.A., IV about the drug raid. Geer responded that she did and that she asked R.L.A., IV "what had happened." R.L.A., III's trial counsel objected that the question "calls for hearsay." The Department responded that this testimony would "fall under an exception for [R.L.A., IV's] present-sense impression" because he had been through a "pretty traumatic experience." The Department stated that "[j]ust being talked to by a CPS investigator would be traumatic," and believed these statements would fall under an exception to hearsay. R.L.A., III's trial counsel countered that the interview with Geer occurred after the child had been to school, and that the child was in the hall and available to testify. The trial court ruled that it would allow Geer's testimony for a "limited purpose under the state-of-mind exception." R.L.A., III was granted a running objection to hearsay.

Geer then testified that R.L.A., IV told her he had woken up early, dressed, and laid down until the bus arrived. He told her that he heard a loud bang and screaming, and that he hid in his closet until he heard the police. Geer stated further that R.L.A., IV told her he came out of the closet and sat on the couch as directed by law enforcement. She testified that R.L.A., IV also told her he was allowed to finish dressing and get on the school bus.

Later, the Department asked Geer if there were any APS cases regarding R.L.A., III. She answered affirmatively and stated that these cases involved several elderly people who rented trailers from R.L.A., III. According to Geer, these elderly people were giving R.L.A., III checks in exchange for drugs, and that several of these cases were validated for neglect because these people did not have utilities and had not seen a doctor in years. R.L.A., III's trial counsel objected that "[t]his is all hearsay." The Department responded that Geer was testifying about her investigations and the resulting findings. The trial court overruled R.L.A., III's objection. Geer also stated that in all of the Department and APS cases against R.L.A., III, drugs and selling drugs was a consistent allegation. R.L.A., III's trial counsel did not object.

Edna Haberle, a case worker supervisor for Cherokee County CASA, stated that CASA was appointed as guardian ad litem in this case in October 2011. She interviewed R.L.A., IV and testified that, from the beginning of the case, "he has consistently stated that he wants . . . ." At that point, R.L.A., III's trial counsel interrupted Haberle, and objected as to hearsay. The Department responded "same thing, 803(3) . . . allows this testimony to indicate [R.L.A., IV's] state of mind." The trial court overruled the objection, stating that this testimony had already

been heard and that "[i]t goes to state of mind." Again, R.L.A., III requested a running objection and the trial court agreed. Then, Haberle stated that CASA believed it was in R.L.A., IV's best interest that he be allowed to remain with his foster parents, and that R.L.A., III's and D.V.Z.'s parental rights be terminated. She also agreed that "what the child wants and what CASA wants . . . is the same thing."

**Analysis**

In her second issue, D.V.Z. argues that Geer's and Haberle's testimony regarding R.L.A., IV's desire to remain with his foster family was inadmissible hearsay. But D.V.Z. did not object to Geer's or Haberle's testimony. *See* TEX. R. APP. P. 33.1(a)(1)(A), (2); ***Ethington***, 819 S.W.2d at 858. Although R.L.A., III objected to Haberle's testimony, D.V.Z. must have lodged her own objections in order to preserve error. *See* ***Beutel***, 916 S.W.2d at 694. Because D.V.Z. did not object to Geer's and Haberle's testimony regarding R.L.A., IV's desire to remain with his foster family, she has waived this issue. *See* TEX. R. APP. P. 33.1(a)(1)(A), (2). Accordingly, we overrule D.V.Z.'s second issue.

In his seventh issue, R.L.A., III complains that Haberle's testimony regarding R.L.A., IV's best interest and desire to remain with his foster family was inadmissible hearsay. However, even if we assume this testimony was inadmissible, an error in the admission of evidence is harmless if substantially the same evidence is admitted elsewhere without objection. *See* ***Mayes***, 816 S.W.2d at 88; ***Prieto***, 337 S.W.3d at 922. Further, R.L.A., III must have objected every time allegedly inadmissible evidence was offered or he has waived any complaint about the admission of the evidence. *See* ***Lagrone v. State***, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997); ***Hudson***, 675 S.W.2d at 511. From our review of the record, we conclude that R.L.A., III failed to make all of the required objections.

Earlier, D.V.Z. was asked if she was aware that R.L.A., IV wanted to be adopted by his foster parents. She stated that it was the first time she had heard about it. Later, she was asked, "But what if [R.L.A., IV] considers his family the [foster parents]?" D.V.Z. stated that "[a]ny child would." Also, R.L.A., III testified that it concerned him if R.L.A., IV wanted to live with his foster parents.

Further, Geer testified that R.L.A., IV was asked if he had any relatives or grandparents he could live with. She stated that R.L.A., IV gave her the name of his previous foster parents. According to Geer, R.L.A., IV said he had lived with his previous foster parents most of his life

13

and that he was "adamant" about wanting to go back to them. R.L.A., III did not object to this testimony. Because the evidence that R.L.A., IV wanted to live with his previous foster parents had already been admitted without objection and was substantially similar to Haberle's statements regarding R.L.A., IV's best interest, any error admitting Haberle's testimony is harmless. *See Mayes*, 816 S.W.2d at 88; *Prieto*, 337 S.W.3d at 922. Accordingly, we overrule R.L.A., III's seventh issue.

In his eighth issue, R.L.A., III complains that Geer's testimony regarding her investigations of APS cases pertaining to him was inadmissible hearsay. We need not determine if Geer's testimony was hearsay, however, because even assuming her testimony was inadmissible hearsay, any error in its admission was harmless. To be entitled to reversal due to the erroneous admission of evidence, an appellant must show that the error probably resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a); *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In making this determination, the court must review the entire record. *Central Expressway*, 302 S.W.3d at 870. The admission of the challenged evidence is harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Id.*; *see also In re K.R.*, 63 S.W.3d 796, 800–01 (Tex. 2001) (recognizing that error in evidentiary ruling during termination case is subject to "harmless error" test).

R.L.A., III contends the evidence that he was a "swindling, dope dealer actively preying on the elderly" in all reasonable probability had a persuasive impact on the jury and caused the rendition of an improper judgment. We disagree. R.L.A., III testified that he was convicted of possession of a controlled substance in 1994 and violated his parole in 2003. He also testified that he was incarcerated in 2003 for possession while R.L.A., IV lived with him. R.L.A., III testified that he had dealt drugs out of the trailer house that was the location of the drug raid. However, at one point, he contradicted this testimony, stating that he did not deal drugs at "that home." He admitted that the trailer house has been raided by law enforcement on more than one occasion. At the time of trial, he was on parole, had been indicted for possession of a controlled substance, and was in jail.

R.L.A., III did not object to any of this testimony, which was cumulative of, and substantially similar to, Geer's testimony regarding her investigations of APS cases pertaining to him. Therefore, any error admitting Geer's testimony is harmless. *See Central Expressway*, 302

S.W.3d at 870; *In re K.R.*, 63 S.W.3d at 800–01.  Accordingly, we overrule R.L.A., III's eighth issue.

In his ninth issue, R.L.A., III contends that Geer's testimony regarding what R.L.A., IV told her occurred the morning of the drug raid was inadmissible hearsay.  However, an error in the admission of evidence is harmless if substantially the same evidence is admitted elsewhere without objection.  *See Mayes*, 816 S.W.2d at 88; *Prieto*, 337 S.W.3d at 922.  Moreover, the admission of the challenged evidence is harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference in the judgment.  *See Central Expressway*, 302 S.W.3d at 870.

Dusty Lee, a detective with the Cherokee County Sheriff's Office in October 2011, testified that he participated in a drug raid in October 2011 that involved more than five law enforcement officers.  He stated that the drug raid was not peaceful and that contraband was found in the home.  Lee testified that the older child, R.L.A., IV, was awake when they arrived, sitting in the living room, and preparing to get on the school bus.  He stated that the authorities decided to allow R.L.A., IV to go to school.  R.L.A., III testified that when the drug raid occurred, R.L.A., IV sat down on the couch.  R.L.A., III did not object to any of this testimony.

The evidence that R.L.A., IV was awake when they arrived, sat on the couch, and went to school was admitted without objection.  Moreover, the testimony was substantially similar to, and cumulative of, Geer's testimony regarding what R.L.A., IV told her occurred the morning of the drug raid.  Therefore, any error admitting Geer's testimony is harmless.  *See Central Expressway*, 302 S.W.3d at 870; *In re K.R.*, 63 S.W.3d at 800–01.  Accordingly, we overrule R.L.A., III's ninth issue.

### DISPOSITION

We have overruled D.V.Z.'s two issues and R.L.A., III's ten issues.  Having done so, we *affirm* the judgment of the trial court.

### BRIAN HOYLE
Justice

Opinion delivered March 15, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 15, 2013**

**NO. 12-12-00317-CV**

**IN THE INTEREST OF R.L.A., IV AND T.A., CHILDREN**

Appeal from the County Court at Law

of Cherokee County, Texas. (Tr.Ct.No. 2011-10-0816)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*